Louis GRIME, Respondent,

v.

ALTEC INDUSTRIES, Appellant.

No. WD 60262.

Missouri Court of Appeals,
Western District.

June 11, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 25, 2002.

Application for Transfer Denied
Sept. 24, 2002.

John R. Fox, Kansas City, for Appellant.

Jerrold Kenter, Kansas City, for Respondent.

Before ROBERT G. ULRICH, P.J.,
PATRICIA A. BRECKENRIDGE and
LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Altec Industries, Inc. ("Employer") appeals the decision of the Labor and Industrial Relations Commission ("Commission") awarding Louis Grime compensation under Chapter 287, the Workers' Compensation Act, for an occupational disease. Employer claims that the Commission erred in affirming the Administrative Law Judge's ("ALJ") award of compensation because Mr. Grime failed to (1) establish that he sustained an occupational disease arising out of and in the course of employment; and (2) separate out any preexisting disability from his current disability.[1] The order of the Commission is reversed.

---

1. Because the first point on appeal is dispositive, Employer's second point on appeal is not addressed.

## Facts

Louis Grime worked for Employer from 1984 until July 3, 1998. Employer manufactures digger derricks and lift machines that can be mounted on the back of commercial trucks. When Mr. Grime first began work with Employer, he was assigned to the paint booth where he sanded and primed steel booms that were fifteen to twenty feet in length. In sanding the booms, Mr. Grime was required to use a circular sander, a vibrating tool weighing approximately three to four pounds. Operating the circular sander required the use of both hands.

In 1986, Mr. Grime began experiencing problems with his hands. Employer sent Mr. Grime to see Dr. Jon Gaffney, a hand surgeon. Dr. Gaffney diagnosed Mr. Grime with bilateral carpal tunnel syndrome and performed a bilateral carpal tunnel release on Mr. Grime's wrists on August 27, 1986.

After surgery, Mr. Grime underwent physical therapy. In his last physical therapy session on October 16, 1986, the therapist stated that Mr. Grime was doing well and was able to accomplish daily living activities at home. The therapist also stated that Mr. Grime's range of motion was within normal limits and that he did not complain of numbness or tingling in his hands.

Dr. Gaffney last saw Mr. Grime on October 17, 1986, and reported that he was doing well and was pleased with the results of the surgery. Dr. Gaffney noted that Mr. Grime had no residual effects from the carpal tunnel syndrome. Mr. Grime was released to full duty on October 20, 1986. In a report to the Division of Workers' Compensation, dated December 31, 1986, Dr. Gaffney stated that Mr. Grime had "no disability rating."

Mr. Grime did not seek any treatment for carpal tunnel syndrome after Dr. Gaffney released him, and he did not miss any time from work because of carpal tunnel syndrome. Employer paid medical expenses of $2,267.62 and temporary total disability compensation of $1,669.44 representing 7⅞ weeks. The Division of Workers' Compensation assigned Mr. Grime an injury number for his carpal tunnel syndrome, but because a conference was never set before an ALJ or legal advisor, Mr. Grime's file was later closed.

When Mr. Grime returned to work, Employer placed him in a department that built buckets. While in that department, Mr. Grime was required to use vibrating air tools and was occasionally required to sand buckets. In 1988, Mr. Grime complained to his supervisor that this job was bothering his hands and Employer transferred Mr. Grime to the warehouse. In the warehouse, Mr. Grime's tasks involved repetitive hand activity and lifting of up to one hundred pounds. Mr. Grime eventually retired from Employer on July 3, 1998, because his hands were bothering him too much to continue working for Employer.

In August of 1998, Mr. Grime filed a Claim for Compensation with the Division of Workers' Compensation seeking permanent partial disability benefits. Mr. Grime conceded to the ALJ that the statute of limitations expired on his 1986 injury. Thus, the issue on which the case turned was whether Mr. Grime's work conditions, after his return to work in October of 1986, caused the occupational disease for which Mr. Grime now seeks compensation.

The ALJ assessed Mr. Grime with 6% permanent partial disability of the body as a whole. Consequently, Mr. Grime was awarded benefits under Chapter 287. The Commission affirmed the award. The crucial piece of evidence was a medical report

from Dr. James Hopkins, which is discussed below.

This appeal by Employer followed.

On appeal, Employer claims that the Commission erred in upholding the award of permanent partial disability benefits because Mr. Grime failed to (1) establish that he sustained an occupational disease arising out of and in the course of employment and (2) separate out any preexisting disability from his current disability.

## Standard of Review

Section 287.495 provides the standard of review for a workers' compensation case. It states in relevant part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the Commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the Commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

This court's process of reviewing the Commission's decision is two-fold:

> In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but

must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 571 (Mo.App. W.D.1995).

## Whether Occupational Disease Was Caused by Post 1986 Employment

In point one, Employer claims that Mr. Grime failed to establish that he sustained an occupational disease arising out of and in the course of employment. Specifically, Employer argues that Mr. Grime's medical evidence does not establish with a reasonable degree of medical probability that Mr. Grime sustained an occupational disease after Mr. Grime's return to work following his 1986 bilateral carpal tunnel releases. This court agrees.

 Claimant has the burden of proving all essential elements of a claim, including causation. *Decker v. Square D Co.,* 974 S.W.2d 667, 670 (Mo.App. W.D. 1998). The question of causation is one for medical testimony, without which a finding for claimant would be based on mere conjecture and speculation and not on substantial evidence. *Jacobs v. City of Jefferson,* 991 S.W.2d 693, 696 (Mo.App. W.D. 1999). The claimant bears the burden of proving a direct causal relationship between the conditions of his employment and the occupational disease. *Id.* In cases in which a worker seeks compensation for carpal tunnel syndrome, he or she must submit a medical expert who can establish the probability that working conditions caused the disease. *Decker,* 974 S.W.2d at 669.

The only medical evidence that Mr. Grime presented to support a finding of causation was a medical report from Dr. James Hopkins, dated July 14, 1999. In that report, Dr. Hopkins diagnosed Mr. Grime with an overuse condition of both upper extremities and assessed Mr. Grime with 15% permanent partial disability of the right upper extremity and 10% permanent partial disability of the left upper extremity, with a 15% loading factor. Dr. Hopkins ultimately concluded in the report that, "[t]o the best of medical certainty, [Mr. Grime's] conditions are directly related to the injuries sustained originally in 1986 requiring carpal tunnel release bilaterally with residual problems extending to the present time."

Employer argued to the Commission that Dr. Hopkins' report failed to establish causation because the report did not specify that the percentages of disability attributed to Mr. Grime were the result of an occupational disease occurring after Mr. Grime's return to work in October of 1986.

In upholding the ALJ's award of compensation, the Commission first cited Dr. Jon Gaffney's December 31, 1986, report in which Dr. Gaffney concluded that Mr. Grime had no residual disability after his surgery in 1986. The Commission also cited Mr. Grime's testimony that he was able to return to work full-time, that he missed no work as a result of carpal tunnel syndrome until he retired, and that he was able to perform all activities of daily living without problems attributable to the syndrome. Based upon Dr. Gaffney's report and Mr. Grime's testimony, the Commission found that Mr. Grime had 0% permanent partial disability from having carpal tunnel syndrome in 1986. From that

point, the Commission went on to conclude that:

"Dr. Hopkin's opinion [is not] fatal because he did not specify that his percentages of disability specifically resulted. from an overuse syndrome after 1986. Dr. Hopkins refers to claimant's residual problems extending to the present time. Since he had no residual problems after treatment in 1986, the residual problems referenced by Dr. Hopkins necessarily started sometime later and are not inclusive of any disability from 1986."

■ Viewing the evidence in the light most favorable to the award of compensation, sufficient competent evidence did not exist to warrant the award of compensation. Dr. Hopkins' report fails to show the existence of a direct causal relationship between the conditions of Mr. Grime's employment, after Mr. Grime's return to work in October of 1986, and his occupational disease. While Dr. Hopkins' report does indicate that Mr. Grime is permanently and partially disabled, the report does not state that Mr. Grime's disability is directly related to the conditions of Mr. Grime's employment after October of 1986. Instead, Dr. Hopkin's report indicates that Mr. Grime's present condition is "directly related to the injuries sustained originally in 1986 requiring carpal tunnel release bilaterally." [2] The Commission's reliance on the phrase "with residual problems extending to the present time" to support its decision is misplaced. Dr. Hopkins' report simply cannot be interpreted to establish that Mr. Grime's employment caused him to suffer an occupational disease after his return to work in October of 1986 or even

---

2. The ALJ noted that "Dr. Hopkins appeared to be of the opinion he was writing a report for a 1986 injury that had been left open." The ALJ concluded, however, that Dr. Hopkins' use of the words "with residual problems extending to the present time" supported a finding of causation.

that Mr. Grime's work conditions aggravated a previous injury.

Because Dr. Hopkins' report was the only medical evidence that Mr. Grime submitted to establish causation, and because Dr. Hopkins' report does not establish causation, Mr. Grime failed to show a direct causal relationship between the conditions of his employment and his occupational disease. The Commission erred in affirming the award of compensation.

Having found that Mr. Grime did not prove all the essential elements of his claim, sufficient competent evidence did not exist in the record to support the ALJ's award of compensation.

The order of the Commission is reversed.

BRECKENRIDGE, J. and HARDWICK, J. concur.