Larry M. SHELTON, Claimant–
Appellant,

v.

CITY OF SPRINGFIELD, Employer–
Respondent,

and

Treasurer of the State of Missouri, As
Custodian for the Second Injury
Fund, Respondent.

No. 25561.

Missouri Court of Appeals,
Southern District,
Division Two.

March 23, 2004.

Richard D. Crites, Springfield, for appellant.

Patrick J. Platter, Neale & Newman, LLP, Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Larry M. Shelton ("Shelton") appeals the denial of his claim for workers' compensation against the City of Springfield and the Second Injury Fund of the State of Missouri (collectively, "Respondents"). We affirm.

On April 14, 1975, Shelton began working for the Springfield Police Department as a patrol officer. He continued to work in that capacity for the next several years, and was on patrol in his police cruiser during the event that gave rise to his claim for workers' compensation. On June 11, 1989, at a little after 11:30 p.m., Officer Ron Hutchison ("Hutchison") initiated a vehicular pursuit of a blue truck that had failed to stop at a red traffic signal at an intersection in Springfield, Missouri. Hutchison activated his emergency equipment and attempted to effectuate a traffic

stop, but the driver of the vehicle ignored Hutchison's efforts and continued driving, failing to stop at a subsequent stop sign in the process. Hutchison contacted police headquarters and informed Sergeant William Buron ("Sergeant Buron") that he was in pursuit of the truck and Shelton joined the pursuit as a secondary unit soon thereafter.

At some point during the pursuit, after the chase had extended beyond the city limits of Springfield, Sergeant Buron instructed the officers to discontinue their pursuit. At this time, Hutchison disengaged his emergency equipment, turned around, and began driving back toward Springfield. Shelton, however, continued driving eastbound, on the same road and in the same direction taken by the suspect truck. Shelton testified that, at some point, he turned his car around and, while attempting to drive back to Springfield, he encountered an accident scene involving the suspect truck, which had driven off the roadway and struck a tree. The driver, a male, was able to exit the truck, but a female passenger was rendered unconscious by the accident and remained trapped inside the vehicle on the passenger's side. Shelton requested an ambulance and a rescue unit, but was otherwise unable to assist the passenger who died at the scene of the accident.

Following the accident, Sergeant Buron referred the incident to the Internal Affairs Department for an investigation into whether Shelton committed misconduct in the course of the vehicular pursuit. From June 11, 1989, the date of the incident, until July 14, 1989, Shelton worked a total of eleven days, while taking sixteen days of vacation, holiday, and leave. On July 11, 1989, Shelton visited his personal physician, who diagnosed him with depression. On July 19, 1989, Shelton was admitted to the Marian Center at St. John's Regional Health Center because he was severely depressed and suicidal. He remained at the Marian Center until September 22, 1989, when he was discharged as an outpatient.

On October 16, 1989, Shelton filed an Application for Disability Benefits under the Springfield Policemen's and Firemen's Pension Plan ("Pension Plan"), alleging that he was entitled to a duty-related disability pension because he suffered from post-traumatic stress disorder ("PTSD") as a result of his involvement in the June 11, 1989 incident. Following a hearing, the Pension Board found that Shelton suffered PTSD as a result of his involvement in the June 11, 1989 incident; that he was disabled as a result of his PTSD; and that his disability "was a direct result of his occupational duties." As a result of these findings, the Pension Board approved Shelton's application for duty-related pension disability benefits.

Subsequently, on April 23, 1991, Shelton filed a workers' compensation claim with the Missouri Labor and Industrial Relations Commission ("Commission"). In his claim, Shelton alleged that he suffered a psychological injury, or an aggravation of a pre-existing personality disorder, while acting in the course and scope of his duties as a Springfield police officer. In particular, Shelton claimed that he was injured as a result of his participation in the June 11, 1989 pursuit and his inability to assist the female passenger who died in his presence. Following a hearing before the Division of Workers' Compensation, the ALJ found, *inter alia*, that Shelton's injury was not compensable under the Workers' Compensation Act and, consequently, Shelton's claim for benefits was denied. In making that determination, the ALJ specifically rejected Shelton's argument that, under the doctrine of collateral estoppel, the findings of the Pension Board were binding

and dispositive in Shelton's claim for workers' compensation. Accordingly, the ALJ excluded from evidence Exhibits A, B, C, D, and AA, all of which pertained to Shelton's collateral estoppel claim.

On March 19, 2003, the Commission adopted the ALJ's findings and determined that Shelton was not entitled to compensation. This appeal follows.

Shelton presents three points on appeal. In his first point, he argues that the Commission erroneously excluded the exhibits he offered in support of his claim of collateral estoppel. In his second, Shelton alleges that the Commission erred in finding that the doctrine of collateral estoppel did not apply so as to preclude Springfield from litigating issues that were previously addressed and decided by the Pension Board. In his final point, Shelton contends that the Commission erred in finding that the June 11, 1989 incident did not cause a work-related psychological injury that resulted in his permanent disability because that finding was not supported by substantial evidence.

 In reviewing an award by the Commission, our review is limited to a determination of whether, in light of the entire record, there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). If an award "is contrary to the overwhelming weight of the evidence," then it is not supported by competent and substantial evidence, and must be overturned on appeal. *Id.*

 For ease of discussion, we first turn to Shelton's second point on appeal, namely that, the factual and legal issues decided by the Pension Board were the same issues presented in Shelton's workers' compensation claim, and, thus, the Commission erred in refusing to apply the doctrine of collateral estoppel. Specifically, Shelton's point is that the doctrine should have been applied to his workers' compensation claim because:

> (a) the burden of proof in [the workers' compensation] action is the same or less than that in the pension action; and (b) that the issues of (1) whether [Shelton] sustained an accident on or about June 11, 1989; and (2) if so, whether the accident was a direct result of [Shelton's] occupational duties; and if so (3) whether [Shelton] became disabled as a result of the June 11, 1989, which were presented in the pension board case were the same as these issues in [the workers' compensation] action; and (c) that the decision of the pension board was in fact a final adjudication between these parties, on the merits which qualify under Missouri law to be enforced by the application of the doctrine of collateral estoppel.

Notwithstanding his arguments to the contrary, Shelton's second point must be denied because the elements of collateral estoppel are not satisfied in this case.

 At the outset, we note that the doctrine of collateral estoppel, or issue preclusion, provides that when an issue has been judicially determined in one action, that same issue may not subsequently be relitigated in another action. *Green v. City of St. Louis*, 870 S.W.2d 794, 797 (Mo. banc 1994). In determining whether it is appropriate to apply collateral estoppel to a particular case, the Missouri courts are to consider the following factors:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action;
>
> (2) whether the prior adjudication resulted in a judgment on the merits;
>
> (3) whether the party against whom collateral estoppel is asserted was a par-

ty or was in privity with a party to the prior adjudication; and

(4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Shahan v. Shahan,* 988 S.W.2d 529, 532–33 (Mo. banc 1999) (citing *Oates v. Safeco Ins. Co.,* 583 S.W.2d 713, 719 (Mo. banc 1979)).

Here, Shelton's collateral estoppel argument is premised on the assertion that his application for a disability pension and his claim for workers' compensation essentially involved the same issues. Thus, the argument follows, in resolving and ruling on Shelton's pension application, the Pension Board effectively determined the viability of his workers' compensation claim as well. This argument, however, confuses both the scope of the Pension Plan and the nature of the Missouri Workers' Compensation Law [1] as well.

We first note that the Pension Plan expressly limits its coverage to disability pension awards under the terms of the Plan. Policemen's and Firemen's Pension Plan Sec. 2–441.[2] In other words, on its face, the Pension Plan itself makes clear that the function of the Pension Board is to determine only whether an employee is entitled to a disability pension under the contractual terms of the Plan. Thus, under the Pension Plan, benefit awards are governed solely—and narrowly—by the provisions of the pension contract.[3]

Conversely, an employee's claim for workers' compensation benefits is governed solely by the provisions of Missouri's Workers' Compensation Law, which is set forth in Chapter 287 of the Missouri Code. Consequently, whether an employee is entitled to workers' compensation benefits is not a contractual issue, but a statutory one. Furthermore, by its own provisions, the Workers' Compensation Law makes clear that it is separate and distinct from "funds for the . . . pension, retirement, or other benefit of . . . policemen." Section 287.100.[4]

Shelton argues, however, that his pension claim nonetheless overlaps with his workers' compensation claim, so that collateral estoppel is appropriate, because both the Pension Plan and the Workers' Compensation Law use similar terms of art and require similar determinations regarding the nature and causation of his injury. While Shelton's argument seems logical, it is ultimately unable to withstand scrutiny.

Under the Pension Plan, "[a]ny employee of the police department . . . who becomes disabled *as the direct result of occupational duties* . . . . . . shall be entitled to a duty disability pension." Plan Sec. 2–474. (emphasis added). Unfortunately, however, while the Plan conditions entitlement to a duty disability pension on a finding by the Board that the employee was injured as "the direct result of occupational duties," it fails to define either "direct result" or "occupational duties." Ultimately, inasmuch as Shelton was awarded a duty disability pension, we must assume that the Pension Board determined that Shelton became disabled as the direct result of occupational duties as defined by

---

1. RSMo. § 287.010 *et. seq.*

2. Hereafter, subsequent sections of the Pension Plan will be noted in the following form: Plan Sec. 2–441 *et. seq.*

3. The contractual nature of the Pension Plan is highlighted by the fact that all Springfield Police and Fire Department employees are required to furnish consideration by making mandatory contributions to the Plan in the form of salary deductions. Plan Sec. 2–455.

4. All references to statutes are to RSMo 2000, unless otherwise indicated.

the Pension Plan and not because of any Workers' Compensation Law.

Unlike the Pension Plan, when we turn to the Missouri Workers' Compensation Law, we note that the statutory scheme permits recovery for "an injury which has arisen out of and in the course of employment." Section 287.020.3.(1). Thus, the Workers' Compensation Law does not make use of the Pension Plan's phrase "direct result of occupational duties," but instead employs the phrase "aris[ing] out of and in the course of the employment." Moreover, unlike the Pension Plan's treatment of its analogous phrase, the Worker's Compensation Law carefully and thoroughly defines "aris[ing] out of and in the course of the employment" as follows:

> (2) An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and
>
> (b) It can be seen to have followed as a natural incident of the work; and
>
> (c) It can be fairly traced to the employment as a proximate cause; and
>
> (d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

Section 287.020.3.

Consequently, while Shelton argues that the Pension Board made the same factual and legal determinations that were subsequently undertaken by the Commission, the reality is that the Pension Board's determination was based on the contractual terms of the Pension Plan, and the undefined phrase "direct result of occupa-

tional duties" in particular, while the Commission's determination was based on the statutory provisions of the Workers' Compensation Law, and the carefully defined phrase "injury aris[ing] out of and in the course of the employment." The administrative bodies, then, were ultimately required to analyze and determine separate, distinct issues: Shelton's contractual rights under the specific terms of the Pension Plan versus Shelton's statutory rights under the specific terms of the Workers' Compensation Law.

As discussed previously, collateral estoppel provides that when an issue has been judicially determined in one action, the same issue may not be relitigated in a subsequent action. *Green*, 870 S.W.2d at 797. While Missouri courts must find that all four elements exist before collateral estoppel may be properly applied, the first element—that the issue decided in the prior adjudication is identical with the issue presented in the present action [5]—is paramount because it represents the very crux of the doctrine. Inasmuch as the issues before the Pension Board and the Commission were not identical, the elements of collateral estoppel were not satisfied. Point II is denied.

▮ Moreover, because we find that the Commission properly refused to apply the doctrine of collateral estoppel to Shelton's workers' compensation claim, we likewise deny his first point, i.e., that the Commission erroneously excluded the exhibits he offered to support his argument in favor of collateral estoppel. During the course of the hearing before the ALJ, Shelton attempted to introduce into evidence bits A, B, C, D, and AA, all of which pertained to his application for and receipt of a duty

---

**5.** *See Shahan,* 988 S.W.2d at 532–33 (citing *Oates,* 583 S.W.2d at 719).

disability pension.[6] Opposing counsel objected to the admission of those exhibits, and after Shelton explained that they were being offered to help prove his collateral estoppel claim, the ALJ excluded the exhibits as being irrelevant for purposes of Shelton's workers' compensation claim.

▮ Fundamental to the Missouri law of evidence is the rule that evidence must be both logically and legally relevant in order to be admissible. *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002), *cert. denied*, 539 U.S. 920, 123 S.Ct. 2287, 156 L.Ed.2d 140 (2003); *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). Evidence is inadmissible if it fails to satisfy either prong of this bifurcated relevancy standard. *Anderson*, 76 S.W.3d at 276.

> Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.

*Tisius*, 92 S.W.3d at 760 (quoting *State v. Mathews*, 33 S.W.3d 658, 661 (Mo.App. S.D.2000)).

▮ Legal relevance, on the other hand, requires "the balancing of the probative value of the proffered evidence against its prejudicial effect on the jury." *Id.* (citing *Mathews*, 33 S.W.3d at 661). Stated another way, legal relevance is determined by "weigh[ing] the probative value of the evidence against its costs," including "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Anderson*, 76 S.W.3d at 276 (quoting *State v. Sladek*, 835 S.W.2d 308, 313 (Mo. banc 1992) (Thomas, J., concurring)). "Thus, logically relevant evidence is excluded if its costs outweigh its benefits." *Id.* Ultimately, the determination of whether evidence is legally relevant rests within the sound discretion of the trial court. *Tisius*, 92 S.W.3d at 760. Consequently, if evidence is erroneously admitted or excluded, we will reverse only if the error results in "substantial and obvious injustice." *Olinger v. Gen. Heating & Cooling Co.*, 896 S.W.2d 43, 48 (Mo. App. W.D.1994).

When we turn to the facts in Shelton's case, we fail to see how the exhibits regarding his Pension Board hearing and award satisfy Missouri's relevancy requirements. In order to meet the standard for logical relevancy, Shelton was required to demonstrate that the evidence "tend[ed] to make the existence of a material fact more or less probable." *Anderson*, 76 S.W.3d at 276. In attempting to introduce the exhibits, Shelton admitted that they were not being offered "on the fact of whether or not this man is disabled under Chapter 287," i.e., the Workers' Compensation Law. Instead, he argued that the exhibits were

---

**6.** After filing an application for review before the Commission, Shelton subsequently filed with the Commission his "Motion to Include Exhibits and to Take Judicial Notice of Municipal Ordinances." In particular, his motion sought to include Exhibits A, B, C, D, and AA, as well as two general ordinances of the City of Springfield. The Commission's denial of Shelton's motion formed the basis for his first point on appeal. In his point on appeal, however, Shelton only alleges that the Commission's refusal to admit Exhibits A, B, C, D, and AA was erroneous, and it does not appear that Shelton made any mention of the Commission's refusal to take judicial notice of the ordinances. While the City of Springfield correctly argues on appeal that courts are not permitted to take judicial notice of ordinances, *see Union Ctr. Redevelopment Corp. v. St. Louis Preservation Bd.*, 75 S.W.3d 784, 786 (Mo.App. E.D.2002); *Caldwell v. McGahan*, 894 S.W.2d 237, 240 (Mo.App. E.D.1995), we need not address the issue because Shelton did not raise it on appeal.

both relevant and necessary to support his claim of collateral estoppel.[7]

In dispensing with Shelton's second point on appeal earlier, we noted that the doctrine of collateral estoppel does not apply to his claim for workers' compensation. In reaching this result, our analysis was not based on any of the exhibits at issue in Shelton's first point, but rather on the terms of the Pension Plan and the provisions of the Workers' Compensation Law. In other words, Exhibits A, B, C, D, and AA were unnecessary and irrelevant for purposes of our determination that collateral estoppel is inapplicable, and they were likewise irrelevant for the Commission's determination that estoppel does not apply. Because the exhibits do not meet the first prong of relevancy—logical relevancy—we need not analyze the legal relevancy prong to determine that they are inadmissible under Missouri Law. Shelton's first point is denied.

■■■■ In his final point on appeal, Shelton argues that the Commission erred in finding that the June 11, 1989 incident did not cause a work-related psychological injury that resulted in his permanent disability because said finding was not supported by substantial evidence. In particular, he alleges that the substantial evidence standard was not satisfied because Respondents' expert testimony and evidence regarding the "causation or nature and extent of [Shelton's] injury" were not based on "a reasonable degree of [medical or] psychological certainty." This argument, however, erroneously attempts to saddle Respondents with the burden of proof when that burden rests squarely on Shelton's shoulders.

■■■■ Under Missouri law, it is well-settled that the claimant bears the burden of proving all the essential elements of a workers' compensation claim, including the causal connection between the accident and the injury. *Grime v. Altec Indus.*, 83 S.W.3d 581, 583 (Mo.App. W.D.2002); *see also Davies v. Carter Carburetor*, 429 S.W.2d 738, 749 (Mo.1968); *McCoy v. Simpson*, 346 Mo. 72, 139 S.W.2d 950, 952 (1940). While the claimant is not required to prove the elements of his claim on the basis of "absolute certainty," he must at least establish the existence of those elements by "reasonable probability."[8] *Sanderson v. Porta–Fab Corp.*, 989 S.W.2d 599, 603 (Mo.App. E.D.1999) (citing *Cook v. Sunnen Prods. Corp.*, 937 S.W.2d 221, 223 (Mo.App. E.D.1996)). Furthermore, the element of causation must be proven by medical testimony, "without which a finding *for claimant* would be based on mere conjecture and speculation and not on substantial evidence." *Grime*, 83 S.W.3d at 583 (citing *Jacobs v. City of Jefferson*, 991 S.W.2d 693, 696 (Mo.App. W.D.1999)) (emphasis added).

In the case before us, the essence of Shelton's third point on appeal is that Respondents failed to submit evidence based on a "reasonable degree of [medical or] psychological certainty" which *disproved* his claim that he was entitled to workers' compensation benefits. Even assuming, *arguendo*, that his assertion is correct, this does not entitle Shelton to a reversal because Respondents were not legally re-

---

7. In particular, Shelton argued that Exhibits A, B, C, D, and AA were being offered as to "issues that are decided; namely, that [Shelton] was acting in the course and scope of his employment, that he did suffer a posttraumatic [sic] stress disorder as the direct result of the June 11, 1989, incident."

8. "Probability means founded on reason and experience which inclines the mind to believe but leaves room for doubt." *Fischer v. Archdiocese of St. Louis–Cardinal Ritter Inst.*, 793 S.W.2d 195, 198–99 (Mo.App. E.D.1990) (quoting *Tate v. Southwestern Bell Tel. Co.*, 715 S.W.2d 326, 329 (Mo.App. S.D.1986)).

quired to present *any* evidence in order to prevent him from receiving benefits. Instead, Shelton was required to present expert medical testimony which established, to a "reasonable degree of [medical or] psychological certainty," that his psychological injury "ar[o]se out of and in the course of [his] employment," namely the June 11, 1989 pursuit. *See Carter v. Jones Truck Lines,* 943 S.W.2d 821, 826 (Mo. App. S.D.1997) (quoting *Pfeffer v. Kerr,* 693 S.W.2d 296, 300 (Mo.App. S.D.1985)).

Admittedly, Shelton did offer evidence in support of his position in the form of the expert testimony of Dr. Thomas Andrew Blansett, a clinical psychologist. Shelton seems to argue, however, that because Dr. Blansett stated his opinion to a "reasonable degree of [medical or] psychological certainty," the Commission was bound to accept the testimony as true; thus, the Commission's ruling against Shelton was "contrary to the overwhelming weight of the evidence." *See Hampton,* 121 S.W.3d at 223. Missouri law clearly establishes that the Commission is the sole judge of witness credibility and, as such, it was entitled to disbelieve Dr. Blansett's testimony even if said testimony was the only evidence provided to the Commission. *See Elliott v. Indiana Western Express,* 118 S.W.3d 297, 299 (Mo.App. S.D.2003) (quoting *Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 59 (Mo.App. E.D.1996)); *see also Cochran v. Indus. Fuels & Res., Inc.,* 995 S.W.2d 489, 494 (Mo.App. S.D.1999) ("It is within the province of the Commission to determine what weight it will accord expert testimony on medical causation.").

In this case, however, besides Dr. Blansett's testimony, the Commission also had the benefit of a considerable amount of other evidence, including the testimony of five other medical doctors and a licensed professional counselor, all of who reached the opposite conclusion of Dr. Blansett. We note that "[t]he Commission's choice of one medical opinion over another is binding on us unless the choice clearly results from an abuse of discretion." *Elliott,* 118 S.W.3d at 299 (citing *Maxon v. Leggett & Platt,* 9 S.W.3d 725, 733 (Mo.App. S.D. 2000)). Moreover, in making its decision, the Commission also had the benefit of Shelton's personnel records, the lay opinions of Shelton's supervisors, and even Shelton's own testimony. Simply put, in light of all the evidence—including the expert testimony that directly refuted Shelton's position—there was no error in the Commission's finding that Shelton did not suffer a work-related psychological injury as a result of the June 11, 1989 incident. Point III is denied.

After analyzing the whole record before us, we find that the Commission's ruling was not "contrary to the overwhelming weight of the evidence" and, thus, was supported by "competent and substantial evidence." The Commission's judgment is affirmed.

PARRISH, J., and BATES, J., concur.