IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 MICHEL ZIADE, )
 Respondent, ) OPINION
 )
 v. ) WD83763
 )
 QUALITY BUSINESS SOLUTIONS, ) FILED: FEBRUARY 9, 2021
 INC., )
 Appellant. )

 Appeal from the Labor & Industrial Relations Commission

 Before Division Four: Cynthia L. Martin, Chief Judge, Presiding,
 Mark D. Pfeiffer, Judge and Anthony Rex Gabbert, Judge

 Quality Business Solutions, Inc. (“QBS”) appeals the final award allowing compensation

entered by the Labor and Industrial Relations Commission (“the Commission”). QBS complains

in three points on appeal that the Commission erred in finding Michel Ziade was an employee, in

refusing to apply judicial estoppel, and in refusing to apply collateral estoppel. We affirm the

Commission’s judgment in part, reverse the Commission’s judgment in part, and enter judgment

pursuant to Rule 84.14.

 Facts

 Kristin Ziade started First Class Medical Transportation (“FCMT”) in 2010. She was the

president and 100 percent owner of the company. Michel Ziade, Kristin’s1 husband, worked for

 1
 Michel and Kristin Ziade will be referred to by their first names to avoid confusion. No disrespect is
intended.

 1
FCMT. Prior to July 2015, FCMT entered into a Client Services Agreement with QBS making

QBS a joint employer with FCMT. Per the agreement, QBS was responsible for providing

workers’ compensation insurance coverage for FCMT employees.

 On July 28, 2015, an FCMT employee named Willie Parker murdered Michel at the

University of Kansas Rehabilitation Center. Parker confessed to murdering Michel over a dispute

involving Parker’s pay. Parker was upset because the night before the murder, FCMT sent him to

a hospital to pick up a patient and FCMT refused to pay him for the extended time he spent waiting

for the patient. Michel was survived by Kristin and their daughter.2

 Kristin submitted a claim for compensation to the Missouri Department of Labor and

Industrial Relations Division of Workers’ Compensation (“the Division”). The claim identified

the employers as FCMT and QBS. QBS claimed it had terminated the Client Services Agreement

prior to the July 28, 2015 murder. Kristin testified the only termination letter pertaining to the

Client Services Agreement she received was in an envelope postmarked August 13, 2015. QBS

also claimed that judicial estoppel and collateral estoppel were appropriate because Kristin took

the position in a civil lawsuit that Michel was on a personal errand when he was murdered.

 The matter proceeded to a hearing.3 The Administrative Law Judge (“ALJ”) found in his

well-articulated twenty-two page ruling that QBS failed to prove it terminated the Client Services

Agreement prior to Michel’s murder. He further found that Kristin met her burden of proving that

Michel’s murder arose out of and in the course and scope of his employment. The ALJ found that

judicial estoppel was not appropriate because it was not clear Kristin took inconsistent positions

 2
 Michel and Kristin’s daughter was born in 2009.
 3
 Kristin explicitly appeared at the hearing in her capacity as Michel’s widow. FCMT did not appear at the
hearing.

 2
in two different proceedings, any finding that Michel was on a personal errand would conflict with

the uncontroverted evidence in the case, and there was no decision in a prior proceeding where the

inconsistent position was allegedly taken. He found that collateral estoppel was not appropriate

because the issue of whether Michel was on a personal errand was not litigated in a prior

proceeding and there was no decision on the merits. The ALJ awarded death benefits in the amount

of $666.67 per week.

 The Commission affirmed the ALJ’s award with a supplemental opinion. It agreed with

the ALJ that QBS failed to prove it terminated the Client Services Agreement prior to Michel’s

murder. It further found that issues of judicial estoppel and collateral estoppel are outside the

scope of the Division’s and the Commission’s jurisdiction. The Commission disavowed the ALJ’s

affirmative findings with respect to judicial estoppel and collateral estoppel. It adopted the ALJ’s

award and decision to the extent it is not inconsistent with the supplemental decision.

 This appeal by QBS follows.

 Standard of Review

 “On appeal, this Court reviews decisions by the Commission to ensure they are ‘supported

by competent and substantial evidence.’” White v. ConAgra Packaged Foods, LLC, 535 S.W.3d

336, 338 (Mo. banc 2017) (quoting Mo. Const. article V, sec. 18).

 The Commission’s decision will only be disturbed if: (1) the Commission acted
 without or in excess of its powers; (2) the award was procured by fraud; (3) the
 facts found by the Commission do not support the award; or (4) there was not
 sufficient competent evidence in the record to warrant the making of the award.

Id. (citing § 287.495.1, RSMo).

 “In reviewing the Commission’s decision, we view the evidence objectively and not in the

light most favorable to the decision of the Commission.” Seifner v. Treas. of State-Custodian of

Second Injury Fund, 362 S.W.3d 59, 63 (Mo. App. W.D. 2012). “We defer to the Commission on

 3
issues concerning credibility and the weight to be given conflicting evidence.” Miller v. Treas.,

State, 425 S.W.3d 218, 220 (Mo. App. E.D. 2014). “However, this Court reviews questions of

law independently and is not bound by the Commission's conclusions of law or its application of

the law to the facts.” Id.

 Point I

 Two different Client Services Agreements were introduced at the hearing. One was from

August 2014 while the other was from January 2015. The two agreements are almost identical.

The August 2014 contract did not require notice be addressed to Kristin specifically. The January

2015 contract did require notice be given to Kristin specifically but was not signed by QBS. QBS

argues that that January 2015 contract is not an enforceable contract because of the lack of QBS

signature. The ALJ and the Commission found that the January 2015 contract was in effect at the

time of Michel’s death.

 In its first point on appeal, QBS claims the Commission erred as a matter of law in finding

that Michel was its employee on July 28, 2015. Specifically, QBS claims the ALJ did not provide

any analysis for how he came to the decision to use the January 2015 Client Services Agreement,

and therefore the Commission could not determine if his analysis of this issue was done adequately

or if an analysis was performed at all.

 QBS’s point is worded as a complaint about the extent of the findings made in this case.

The alleged error is identified as an error of law. Section 287.460 states in relevant part:

 1. The division, through an administrative law judge, shall hear in a summary
 proceeding the parties at issue and their representatives and witnesses and shall
 determine the dispute by issuing the written award within ninety days of the last
 day of the hearing. … The award, together with a statement of the findings of fact,
 rulings of law and any other matters pertinent to the question at issue, shall be filed
 with the record of proceedings….

 4
“Section 287.460.1 mandates that an award in a contested workers’ compensation case be

accompanied by findings of fact and conclusions of law.” Jim Plunkett, Inc. v. Ard, 499 S.W.3d

333, 337 (Mo. App. W.D. 2016) (internal quotation marks omitted). “The Missouri Supreme Court

has declared that such statutory requirements contemplate an unequivocal affirmative finding as

to what the pertinent facts are.” Id. (internal quotation marks omitted). “The factual findings are

necessary so that we can know what a decision means before the duty becomes ours to say whether

it is right or wrong.” Id. (internal quotation marks omitted). “The findings should be designed to

show whether the basis of the decision was an issue of fact or a question of law.” Carver v. Delta

Innovative Services, 379 S.W.3d 865, 870 (Mo. App. W.D. 2012) (internal quotation marks

omitted). “Without factual findings, it can be very difficult to ascertain why the Commission ruled

as it did so that we can perform our duty of review under section 287.495.” Id. (internal quotation

marks omitted).

 “An agency needs to provide the ‘basic findings’ upon which its decision rests.” Id.

(internal quotation marks omitted). “The basic findings are those on which the ultimate finding

rests; the basic findings are more detailed than the ultimate finding but less detailed than a

summary of the evidence.” Id. (internal quotation marks omitted). “Although detailed summaries

of the facts are not required in an agency’s order and report, the findings should be sufficient to

demonstrate how the controlling issues have been decided.” Id. (internal quotation marks omitted).

 The ALJ found that QBS entered into a Client Services Agreement with FCMT on January

8, 2015 which made QBS a co-employer of FCMT’s employees. It found that QBS did not

terminate the agreement prior to Michel’s death. The ALJ concluded that Michel was an employee

of QBS at the time of his death. These are sufficient findings. The ALJ was not required to provide

 5
a further analysis of why it made this factual finding. Thus, the Commission did not err in adopting

the decision of the ALJ as its own with respect to this issue.4

 In the argument section of its brief, QBS goes further and argues that “there is not sufficient

competent and substantial evidence” to support the finding that Michel was an employee of QBS

at the time of his death. This is a very different claim of error than the one identified in the point

relied on. “Arguments advanced in the brief but not raised in the point relied on are not preserved,

and will not be addressed by this court.” Burg v. Dampier, 346 S.W.3d 343, 354 (Mo. App. W.D.

2011) (citing Rule 84.04(e)).

 Further, QBS does not follow the required analytical process for raising a section

287.495.1(4) challenge.

 When a party raises a claim that the Commission’s findings are not supported by
 sufficient competent evidence, he or she must:

 (1) marshal all record evidence favorable to the award; (2) marshal all unfavorable
 evidence, subject to the Commission’s explicit or implicit credibility
 determinations; and (3) show in the context of the whole record how the
 unfavorable evidence so overwhelms the favorable evidence and its reasonable
 inferences that the award is, in context, not supported by competent and substantial
 evidence.

Schlereth v. Aramark Unif. Services, Inc., 589 S.W.3d 645, 652 (Mo. App. E.D. 2019) (internal

quotation marks omitted). “Adherence to this analytical formula is mandatory ... because it

reflects the underlying criteria necessary for a successful challenge—the absence of any such

criteria, even without a court-formulated sequence, dooms an appellant’s challenge.” Id. (internal

quotation marks omitted) (emphasis in original). Any argument that “this formula does not apply

in cases challenging the Commission’s award as not supported by sufficient competent evidence

 4
 QBS does not cite authority to the contrary. Instead, the only authority cited by QBS at all in its first point
is cited for the proposition that a valid contract requires offer, acceptance, and consideration.

 6
is incorrect as a matter of law.” Id. at 652-53. QBS does not use this formula in the argument

section of its brief.

 Finally, we note that the evidence at trial supported the finding that the operative Client

Services Agreement was the January 2015 contract and that it was in effect at the time of Michel’s

death. David Evette, the President of QBS, testified that QBS and FCMT entered into the Client

Services Agreement in January 2015. He also testified to the contradicting proposition that the

August 2014 contract was the operative agreement. Evette acknowledged that he changed his

testimony in the 16 days between his deposition and the hearing regarding whether the August

2014 or the January 2015 contract was the operative agreement.

 Evette testified that QBS sent two termination letters – one in July 2015 before Michel’s

death and one in August 2015. Kristin testified that FCMT only received the August 2015

termination letter. The ALJ and Commission found that QBS did not terminate the contract

immediately upon learning of an alleged material breach and that, even with a July 2015

termination letter, QBS did not give 30 days notice of termination. The termination letter was not

dated. QBS did not have a certified or registered mail receipt indicating a termination letter was

sent in July 2015.

 The August 2015 termination letter is the only one that QBS could prove it sent. The

August 2015 notice did not reference a July 2015 termination letter and did not explain why a

second termination letter was being sent. To the contrary, the Commission found that the existence

of the August 2015 termination letter was probative evidence that the July 2015 letter was never

sent. Finally, Evette admitted that QBS intended to do payroll for FCMT on July 31, 2015, after

the supposed first termination. The finding that the January 2015 Client Services Agreement was

not terminated prior to Michel’s death was supported by sufficient competent evidence.

 7
 The Commission made the statutorily required findings in its judgment. Any allegation

that its findings were not supported by sufficient competent evidence was not preserved in the

point on appeal, was not made in the proper form, and is contrary to the evidence in the record.

The point is denied.

 Points II and III

 In its second point on appeal, QBS claims the Commission erred in refusing to apply

principles of judicial estoppel. In its third point on appeal, QBS claims the Commission erred in

refusing to apply principles of collateral estoppel. Because these issues are so closely related, we

address them together.

 Judicial estoppel is intended to prevent litigants from taking a position in one judicial

proceeding and taking a contrary position in a later proceeding. In re Contest of Primary Election

Candidacy of Fletcher, 337 S.W.3d 137, 140 (Mo. App. W.D. 2011) (internal quotation marks

omitted). “[T]he doctrine of collateral estoppel, or issue preclusion, provides that when an issue

has been judicially determined in one action, that same issue may not subsequently be relitigated

in another action.” Shelton v. City of Springfield, 130 S.W.3d 30, 34 (Mo. App. S.D. 2004).

 Jurisdiction

 The Commission found that issues of judicial estoppel and collateral estoppel are outside

the scope of its jurisdiction. In support of this conclusion, the Commission cited the following:

 [T]he Commission is an administrative agency created by statute and limited in its
 jurisdiction by the terms of the statute (citations omitted). It is not a court of general
 jurisdiction. … The quasi-judicial power conferred upon an executive agency is
 limited to the ascertainment of facts and the application of existing law in order to
 resolve issues within the given area of agency expertise (citations omitted).

Hunt v. Laclede Gas Co., 869 S.W.2d 770, 773 (Mo. App. E.D. 1993).

 8
 We disagree with the Commission and hold that issues of judicial estoppel and collateral

estoppel are not outside its jurisdiction. Hunt involved “an appeal of an order from the Labor and

Industrial Relations Commission (Commission) affirming the award of attorney's fees in a

workers’ compensation action.” Id. at 771. The employee hired a law firm that was a professional

corporation comprised of two attorneys. Id. The two attorneys’ professional relationship began

deteriorating and they decided to end their professional relationship. Id. The employee settled his

claim with his employer for $5,000 subject to an attorney’s fee of twenty percent of the award. Id.

at 772. The administrative law judge divided the award of attorney’s fees between the two feuding

attorneys who formerly comprised the firm representing the employee. Id. One of the attorneys

appealed, claiming the Commission lacked the jurisdiction to order a division of the fees between

two competing attorneys. Id.

 Both of the competing attorneys claimed to be entitled to the entire award of fees and

neither requested that the Commission split the award between them. Id. at 773. The attorneys

disagreed about numerous facts pertaining to the termination of their professional corporation. Id.

The Eastern District noted that the Commission was statutorily authorized “to determine that the

attorney’s fees charged are fair and reasonable and to hear and determine all disputes concerning

the same.” Id. (internal quotation marks omitted). It held:

 We do not believe this legislative authorization can be construed as vesting the
 Commission with judicial power to decide complex legal issues pertaining to
 professional corporations and the dissolution thereof. Rather, the statute authorizes
 the Commission to resolve disputes concerning the fairness and the reasonableness
 of the fees charged, nothing more. To hold otherwise would raise questions
 regarding separation of powers and the unconstitutional delegation of judicial
 authority.

Id.

 9
 In Mikel v. Pott Industries/St. Louis Ship, 896 S.W.2d 624, 625 (Mo. banc 1995), an

employee filed a workers’ compensation claim. The company providing workers’ compensation

insurance for the employer was insolvent; thus, “the Missouri Property and Casualty Guaranty

Association (the association) was notified of the claim.” Id. “The association is an unincorporated

legal entity created by the legislature for the purpose of protecting the public from insolvent

insurers.” Id. “It is obligated to pay covered claims of certain insolvent insurers.” Id. “The Labor

and Industrial Relations Commission … held that the association stood in the shoes” of the

insolvent insurer. Id.

 The association appealed, claiming “that the commission lacks subject-matter jurisdiction

to determine whether the present case involves a covered claim.” Id. at 626. It argued that “a

declaratory judgment action provides an appropriate method of determining controversies

concerning the construction of statutes and the duties of government agencies thereunder.” Id.

The Missouri Supreme Court disagreed, stating “[i]t is well settled that the commission does not

exceed its constitutional jurisdiction when it decides legal issues in the course of performing its

core function of determining liability.” Id. “In performing its statutory duties, the commission

must routinely determine questions of a purely legal nature.” Id. “The commission’s duty is to

rule upon every issue presented which pertains to a determination of liability under the Act.” Id.

(internal quotation marks omitted).

 The Missouri Supreme Court listed numerous issues that prior cases have held the

Commission has jurisdiction to determine, including the validity of insurance policies and whether

to give full faith and credit to the judgment of a court of a sister state. Id. Significantly, the

Missouri Supreme Court stated in that list: “The commission has jurisdiction to consider the

 10
defense of res judicata and to determine whether it should bar recovery.”5 Id. (citing Overcash v.

Yellow Transit Co., 352 Mo. 993, 180 S.W.2d 678, 684 (1944)). It concluded the Commission

had jurisdiction to decide whether the association is liable to the employee. Id. It distinguished

Hunt, noting “[t]he issue in Hunt … did not go to a determination of liability under the workers’

compensation law, but to a dispute between persons who were not parties to the action.” Id. at

627.

 In Seifner v. Treas. of State-Custodian of Second Injury Fund, 362 S.W.3d 59, 61 (Mo.

App. W.D. 2012), an employee appealed from a decision of the Commission denying his claim

against the Second Injury Fund (“the Fund”). He appealed, claiming in part that “the Commission

erred in denying his claim because … the doctrine of collateral estoppel precluded the Fund from

relitigating the percentage of permanent partial disability based on the last injury because the same

issue was settled between [the employee] and his employer.” Id. This court found that the Fund

was not bound by the settlement because it was not a party to settlement. Id. at 64. This court

went on to conduct a collateral estoppel analysis and found that the employee could not establish

all the elements of collateral estoppel. Id. at 64-65.

 In Shelton, 130 S.W.3d at 32, an employee appealed the denial of his claim for workers’

compensation. A pension board had found that the employee suffered PTSD as a result of a

workplace incident; that he was disabled as a result of his PTSD; and that his disability was a direct

result of his occupational duties. Id. at 33. The employee subsequently filed a workers’

compensation claim. Id. The Commission rejected the employee’s argument that it was bound by

 5
 “The concepts of res judicata and collateral estoppel are related but possess different
characteristics. Res judicata precludes the same parties from relitigating the same claim (‘claim
preclusion’); collateral estoppel precludes the same parties from relitigating an issue which has been previously
adjudicated (‘issue preclusion’).” Stine v. Warford, 18 S.W.3d 601, 605 (Mo. App. W.D. 2000).

 11
the pension board’s findings. Id. at 33-34. The Southern District found that the elements of

collateral estoppel were not satisfied and agreed. Id. at 34-35.

 Hunt, the case cited by the Commission, is distinguishable because it involved a dispute

between persons who were not a party to the pending action. 869 S.W.2d at 771-72. Issues of

judicial estoppel and collateral estoppel, like res judicata, are relevant to the Commission’s

determination of liability. See Mikel, 896 S.W.2d at 626-27. The Commission did not cite, and

we do not find, any authority prohibiting it from considering issues of collateral estoppel and

judicial estoppel. Moreover, appellate courts have engaged in a collateral estoppel analysis with

respect to the Commission. Seifner, 362 S.W.3d at 61-65; Shelton, 130 S.W.3d at 32-35.6 We

hold that issues of judicial estoppel and collateral estoppel are not beyond the Commission’s

jurisdiction.

 Judicial Estoppel

 “[J]udicial estoppel is not a cause of action with elements that must be proven and that are

prerequisites to its application.” Vacca v. Missouri Dept. of Lab. and Indus. Rel., 575 S.W.3d 223,

235 (Mo. banc 2019). “Rather … it is a flexible, equitable doctrine intended to preserve the

integrity of the courts.” Id. “All factors that are relevant should be considered by the Court, but

once a party takes truly inconsistent positions, there are no inflexible prerequisites or an exhaustive

 6
 Another example of the Commission analyzing an outside judgment is found in Travis v. Contico Intern.,
Inc., 928 S.W.2d 367 (Mo. App. E.D. 1996). In that case, an employee was killed in a work related accident. Id. at
369. The employee’s mother filed a claim for death benefits. Id. A woman also filed a claim for death benefits on
behalf of her two minor children. Id. The children offered as evidence certified copies of an order of paternity from
a Missouri Court establishing the deceased employee as the father of the children. Id. The employee’s mother attacked
the order on the ground that the court had not acquired jurisdiction over the deceased alleged father prior to entering
the order. Id. The ALJ awarded the mother death benefits; the Commission found the order of paternity dispositive
and awarded the children death benefits. Id. The employee’s mother appealed. Id.
 The Eastern District addressed whether the employee’s mother could challenge the order of paternity in a
collateral proceeding. Id. It concluded that mother could challenge the order because the order was void on its face
because the wrong party was appointed to represent the deceased father’s interests. Id. at 369-70. “If a judgment is
void, a legal nullity, then an administrative body is prohibited from giving it any legal effect.” Id. at 370. The appellate
court held that the Commission erred by considering the void judgment. Id.

 12
formula for determining the applicability of judicial estoppel.” Id. (internal quotation marks

omitted). Courts do have some factors that serve as guideposts and are “intended to assist courts

in identifying when judicial estoppel should be applied to preserve the integrity of the judicial

process and prevent litigants from playing ‘fast and loose’ with the courts.” Id. at 236.

 First, a party’s later position must be clearly inconsistent with its earlier position.
 …
 Second, courts regularly inquire whether the party has succeeded in persuading a
 court to accept that party’s earlier position, so that judicial acceptance of an
 inconsistent position in a later proceeding would create the perception that either
 the first or the second court was misled. … Absent success in a prior proceeding, a
 party’s later inconsistent position introduces no risk of inconsistent court
 determinations … and thus poses little threat to judicial integrity.
 …
 A third consideration is whether the party seeking to assert an inconsistent position
 would derive an unfair advantage or impose an unfair detriment on the opposing
 party if not estopped.

Id. at 232-33 (internal quotation marks and citations omitted). “Judicial estoppel may be

appropriate in a particular case whether those circumstances show the prior statement was made

under oath in a judicial proceeding, or under penalty of perjury in an administrative filing, or in

pleadings filed with a prior administrative proceeding.” Id. at 236.

 QBS makes the following res judicata argument: Kristin filed a wrongful death lawsuit in

federal court. Kristin alleged in that lawsuit that Michel was on a personal, non-work-related

errand when he was shot. Kristin filed a motion for summary judgment. Kristin alleged in her

facts supporting that motion that Michel was on a personal, non-work-related errand when he was

shot. The judge in that lawsuit specifically found that Michel was on a personal, non-work-related

errand. Kristin is claiming in this workers’ compensation claim that Michel was killed in the

course and scope of his employment. Such a claim is clearly inconsistent with the position she

took in her wrongful death lawsuit and the judge’s finding in that case.

 13
 QBS completely misstates the proceedings. Kristin did not file a wrongful death lawsuit

in federal court. She made a wrongful death claim against FCMT’s liability insurer, ASI. ASI then

filed a declaratory judgment action in federal court to determine whether there was coverage for

such a claim under its policy.

 ASI, not Kristin, then moved for summary judgment. The motion listed 60 uncontroverted

facts. Fact number 8 was that Edward Williams, an attorney for FCMT and Kristin, sent a letter

to ASI. Fact number 8 contained the full text of that letter. Williams stated in that letter that the

attorney for Talia Ziade had made a demand on FCMT due to the wrongful death of Michel.

Williams demanded that ASI pay money. In addition, Williams stated that Michel was on a

personal, non-business-related errand at the time of the shooting. He also stated that his

investigation revealed that FCMT was at fault in the death of Michel due to its negligent hiring

practices and failure to supervise Willie Parker.

 Kristin’s response to ASI’s motion admitted that the letter was sent, not that the substance

of the letter was accurate. The judge in the declaratory judgment action granted the motion for

summary judgment. He found that FCMT had dropped coverage in its general liability policy for

bodily injuries caused by FCMT employees in April 2015. Thus, Michel’s death in July 2015 fell

outside the scope of coverage. The court made no finding regarding whether Michel was on a

personal or work errand at the time he was shot.

 Judicial estoppel is not appropriate in these circumstances. It is not clear that Kristin took

inconsistent positions. The only allegation that Michel was on a personal errand was made by an

attorney for FCMT, not Kristin, in a demand letter. Kristin never testified that Michel was on a

personal errand. The judge in the declaratory judgment action did not rely on the assertion in the

demand letter that Michel was on a personal errand in granting summary judgment. Kristin did

 14
not receive a benefit in the declaratory judgment action. Moreover, the uncontroverted evidence

in the current case was that Michel was not on a personal errand. 7 The statement in the demand

letter in the declaratory judgment action and Kristin’s worker’s compensation claim together do

not threaten the integrity of the courts. Nothing suggests Kristin has tried to mislead or manipulate

the courts. Compare Vacca, 575 S.W.3d 223 (judicial estoppel appropriate where employee filed

a retaliation claim against employer asserting he could do his job with disability accommodations

while simultaneously asserting in a marriage dissolution action he was unable to work, a claim

fundamentally at odds with his disability claim).

 Collateral Estoppel

 “[T]he doctrine of collateral estoppel, or issue preclusion, provides that when an issue has

been judicially determined in one action, that same issue may not subsequently be relitigated in

another action.” Shelton, 130 S.W.3d at 34. Collateral estoppel has four elements:

 (1) the issue decided in the prior action was identical to the issue presented in the
 later action; (2) the prior action resulted in a judgment on the merits; (3) the party
 against whom estoppel is asserted was a party or was in privity with a party to the
 prior action; and (4) the party against whom collateral estoppel is asserted had a
 full and fair opportunity to litigate the issue in the prior action.

U-Haul Company of Missouri v. Carter, 567 S.W.3d 680, 684 (Mo. App. W.D. 2019). “All

elements must be established before collateral estoppel applies.” Id. “In determining the

applicability of collateral estoppel, [f]airness is the overriding consideration.” Id. (internal

quotation marks omitted).

 7
 The ALJ in the current case found that QBS presented no evidence that Michel was on a personal errand
when he was murdered. QBS did try to argue that Parker murdered Michel for personal reasons as opposed to work
related reasons because Parker did not like white people and because Parker was upset over a personal loan Michel
made to Parker. The ALJ found “[t]here was no credible evidence to support either ‘wild’ allegation as the basis for
the assault.” It found that Parker murdered Michel because of a dispute regarding Parker’s pay.
 While the Commission did not adopt the portion of the ALJ’s award pertaining to judicial and collateral
estoppel, it did adopt all other parts of the award. That would include the ALJ’s finding that Michel was not on a
personal errand. QBS does not challenge this finding on appeal. QBS’s only argument that Michel was on a personal
errand is based on its judicial and collateral estoppel claims.

 15
 “Collateral estoppel does not prevent a party from litigating issues that were never argued

or decided as essential to the judgment in the previous proceeding.” Id. (internal quotation marks

omitted). “Collateral estoppel is triggered when the issue decided in the prior case was identical to

that in the present action[.]” Id. (internal quotation marks omitted) (emphasis in original). “It is

not enough that two claims share common facts if the prior action does not necessarily and

unambiguously resolve the same question presented in the second proceeding.” Id. at 685 (internal

quotation marks omitted).

 QBS’s collateral estoppel argument is based on the same demand letter it used in its judicial

estoppel argument. It states in its brief:

 In the present matter, the issue of what Michel Ziade was doing at the time of his
 murder was previously decided by the United State District Court, Western District
 of Missouri, in Kristin Ziade’s wrongful death lawsuit, specifically it was
 determined Michel Ziade was on a personal, non-business related errand. This
 same issue was brought before the Missouri Division of Workers Compensation,
 when it was alleged Michel Ziade was acting in the course and scope of his
 employment at the time of his murder. The wrongful death lawsuit resulted in a
 final judgement on the merits, specifically a Motion for Summary Judgment.
 Kristin Ziade and her minor daughter were both parties in the prior adjudication
 and they are both parties in the present workers compensation matter. The doctrine
 of collateral estoppel in this matter would be applicable to Kristin Ziade, because
 Kristin Ziade had a full and fair opportunity to litigate this issue when the Federal
 District Court held Michel Ziade was on a personal, non-business related errand at
 the time of his murder in its June 12, 2017 Order.

Again, and for the same reasons explained when discussing judicial estoppel, this is a gross

misstatement of the declaratory judgment proceeding.

 The issue of whether Michel was on a personal errand was not litigated in the declaratory

judgment proceeding. The federal court granted summary judgment because it determined that

FCMT had dropped coverage in its general liability policy for bodily injuries caused by FCMT

employees in April 2015 meaning Michel’s death in July 2015 fell outside the scope of coverage.

The court made no finding regarding whether Michel was on a personal or work errand at the time

 16
he was murdered. Because it was not an issue, Kristin did not have a full and fair opportunity to

litigate whether Michel was on a personal errand in the declaratory judgment proceeding.

Collateral estoppel does not apply here.

 Conclusion

 The part of the Commission’s judgment finding that QBS failed to terminate the January

2015 Client Services Agreement is affirmed. The part of the Commission’s judgment finding it

lacked jurisdiction to consider collateral estoppel and judicial estoppel is vacated. Rule 84.14

states: “The appellate court shall award a new trial or partial new trial, reverse or affirm the

judgment or order of the trial court, in whole or in part, or give such judgment as the court ought

to give. Unless justice otherwise requires, the court shall dispose finally of the case.” (emphasis

added). Accordingly, this court reverses the portion of the judgment pertaining to jurisdiction and

finds that Kristin’s claim is not barred by collateral estoppel or judicial estoppel. We affirm the

judgment in all other respects.

 _______________________________________
 Anthony Rex Gabbert, Judge
All Concur.

 17