

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

U-HAUL COMPANY OF MISSOURI    )
and ARCOA RISK RETENTION    )
GROUP, INC.,    )
   )
        Appellants,    )
   )
v.    )    WD81506
   )
TIMOTHY ANDRE CARTER,    )    Opinion filed:  January 22, 2019
CHRISTY WILSON-FINISTER,    )
DAVON WILSON, KEITH L.    )
WILLIAMS, ASHLEY KNIGHT and    )
KEITH DAWSON,    )
   )
        Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE KENNETH R. GARRETT, III, JUDGE

Before Division One:  Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

This is an appeal from a declaratory judgment action. U-Haul Company of Missouri ("U-Haul") and ARCOA Risk Retention Group, Inc. ("ARCOA") appeal the judgment of the Circuit Court of Jackson County granting summary judgment in favor of Respondents[1] and denying U-Haul and ARCOA's motions for default judgment. The declaratory judgment action sought to resolve insurance coverage questions arising from an automobile collision involving Timothy

---

[1] When we refer to "Respondents," we only mean to include Christy Wilson-Finister, Davon Wilson, Keith Williams, and Ashley Knight. The other two named respondents in this appeal, Timothy Carter and Keith Dawson, did not participate in this declaratory judgment action below and have not participated on appeal.

Carter ("Carter"). It is the position of U-Haul and ARCOA that the collision was the product of a scheme perpetrated by Carter and Respondents to submit fraudulent insurance claims and, as a result, U-Haul and ARCOA had no duty to defend or indemnify Carter under the terms of the relevant policies. The trial court granted summary judgment in favor of Respondents, finding U-Haul and ARCOA were estopped from litigating the coverage issues raised in this action based on a judgment entered in a separate personal injury lawsuit that found Carter negligently caused the collision. Because we determine Respondents have failed to establish they are entitled to summary judgment, we reverse and remand.

## Factual and Procedural Background

On April 28, 2014, Carter rented a U-Haul moving truck. As part of that transaction, Carter and U-Haul entered into a Rental Contract that provided Carter with liability insurance coverage. That coverage did not apply, however, to "any intentional torts or criminal acts; false or fraudulent claims…and any liability for an accident which occurs while the EQUIPMENT is obtained or used in violation of this Agreement." Carter also purchased an Excess Rental Liability Policy that was underwritten by ARCOA. The Excess Rental Liability Policy voided coverage for any claim where "an Insured commits fraud, or intentionally conceals or misrepresents any material fact."

While driving the truck later that same day, Carter collided with a 2001 Acura. Respondent Christy Wilson-Finister ("Wilson-Finister") claimed to have been driving the Acura, and Respondents Davon Wilson ("Wilson"), Keith Williams ("Williams") and Ashley Knight ("Knight") claimed to have been passengers.

U-Haul's claims handler, Repwest Insurance Company ("Repwest"), investigated the collision. In September 2014, Carter spoke with Repwest investigators. Carter signed a written statement attesting that the collision was staged for the purpose of submitting fraudulent insurance

claims for profit and that he participated in the scheme with the expectation that he would profit monetarily. Based on Carter's admissions, U-Haul and ARCOA denied coverage for the claims arising out of the collision.

In July 2016, more than two years after the collision, Respondents filed a personal injury action against Carter, U-Haul, and Midtown Investment Corp. ("Midtown").[2] They asserted one count of negligence against Carter, alleging that Carter collided with the Acura after failing to stop at a stop sign, that the collision was caused by "the negligence, carelessness, and recklessness" of Carter, and that "as a direct and proximate cause of the negligence, carelessness, and recklessness" of Carter, Respondents "sustained severe and permanent personal injuries." Respondents asserted one count of negligent entrustment against Midtown, alleging that Midtown leased the truck to Carter knowing that Carter "was unlicensed." Finally, Respondents asserted one count of "agency" against U-Haul, alleging that Midtown was U-Haul's agent and therefore U-Haul was responsible for the acts of Midtown.

U-Haul and Midtown filed counterclaims against Respondents and crossclaims against Carter for fraud and civil conspiracy. U-Haul and Midtown alleged Wilson-Finister and Carter agreed that Carter would rent a truck and "they would stage a car accident and file claims for property damage and personal injury." U-Haul and Midtown further alleged that Carter confessed to this fraudulent activity, and attached as exhibits Carter's written statement and the transcript of Carter's recorded statement.

In March 2017, U-Haul filed this declaratory judgment action against Respondents, Carter, and Keith Dawson ("Dawson"), who U-Haul alleged was a passenger in the truck with Carter. U-

---

[2] Respondents alleged that Midtown owned the truck and leased it to Carter. Midtown is not a party to this declaratory judgment action.

Haul sought a declaration that it owed no duty to defend Carter under either the Rental Contract or the Excess Rental Liability Policy which U-Haul alleged was "void due to Carter's fraudulent activity and intentional concealment and misrepresentation of material facts after the collision."[3] U-Haul similarly alleged that it had no duty to indemnify under either policy. U-Haul was later granted leave to add ARCOA—the underwriter of the Excess Rental Liability Policy—as a plaintiff.

All parties jointly moved in the personal injury action to stay those proceedings pending resolution of the declaratory judgment case. That request was denied.[4]

In May 2017, Respondents dismissed with prejudice their claims against U-Haul and Midtown in the personal injury lawsuit. Respondents retained their personal injury claim against Carter. In response, U-Haul and Midtown dismissed with prejudice their counterclaims against Respondents, and dismissed without prejudice their crossclaim against Carter.

In June 2017, Respondents proceeded to a bench trial on the remaining claim in the personal injury action against Carter. Carter did not appear at trial. After Respondents presented witnesses and exhibits, the trial court entered its judgment finding that Carter negligently operated the truck and that such negligence caused bodily injury to Respondents. The trial court awarded

---

[3] U-Haul and ARCOA further alleged that Carter and Respondents "misrepresented their relationship and involvement in the staged Collision after the fact."

[4] The judge in both the personal injury lawsuit and the declaratory judgment action was the same. Given the fact that the judge would have been privy to the written and signed statement by Carter in which he admitted to being a participant in a fraudulent scheme relating to the collision which was the subject matter of the personal injury lawsuit, we are perplexed as to why the judge declined to stay the personal injury lawsuit until the declaratory judgment action could be resolved. This decision is more confounding given that the stay was jointly requested by all of the parties to the personal injury lawsuit. Missouri courts have expressly advised that insurers with good faith coverage questions in similar scenarios should file a declaratory judgment action simultaneous to the underlying personal injury action and seek a stay of the personal injury lawsuit proceedings until the declaratory judgment action is decided. *See Ballmer v. Ballmer*, 923 S.W.2d 365, 369-70 (Mo. App. W.D. 1996); *State ex rel. Mid-Century Ins. Co., Inc. v. McKelvey*, 666 S.W.2d 457, 459 (Mo. App. W.D. 1984); *see also Allen v. Bryers*, 512 S.W.3d 17, 41 (Mo. banc 2016) (Wilson, J. concurring). This advice from Missouri's appellate courts rings hollow when insurers follow such advice and they are denied the remedy we have recommended to them.

Wilson-Finister $30,729.26, Wilson $16,559.12, Knight $56,117, and Williams $34,606.18. The judgment was not appealed.

In September 2017, Respondents filed a motion for summary judgment in the declaratory judgment action, which was opposed by U-Haul and ARCOA.[5] Respondents asserted that U-Haul and ARCOA were collaterally estopped from litigating whether Carter's conduct was intentional because it had been determined in the personal injury lawsuit that Carter had negligently caused the collision and that, based on that finding alone, they were entitled to judgment in their favor.

The trial court granted Respondents' motion for summary judgment based on its finding that U-Haul and ARCOA were collaterally estopped "from re-litigating the issue of liability."

This appeal followed.

## Standard of Review

An appeal from the grant of summary judgment is reviewed *de novo. James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001). "The propriety of summary judgment is purely an issue of law, and this Court need not defer to the trial court's ruling." *Id.* We review the record in the light most favorable to the party against whom judgment was entered, and uphold the ruling if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.* "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment." *Allen v. Bryers*, 512 S.W.3d 17, 30 (Mo. banc 2016).

---

[5] U-Haul and ARCOA also filed motions for default judgment against Carter and Dawson, who had failed to answer or otherwise respond to the amended petition for declaratory judgment. The trial court denied these motions based on the same collateral estoppel theory relied upon to grant Respondents' motion for summary judgment.

**Discussion**

Respondents' motion for summary judgment is simple and straightforward. They argue that U-Haul and ARCOA are bound under principles of collateral estoppel to the finding made in the personal injury lawsuit that Carter negligently caused the collision that allegedly injured Respondents and that this finding alone legally entitles them to a judgment in their favor in this declaratory judgment action. The success of this theory is reliant on Respondents establishing that U-Haul and ARCOA are in fact precluded from relitigating the nature of Carter's liability in the collision and, if successful on that point, then establishing that the negligence finding – by itself – entitles them to a finding that U-Haul and ARCOA had a duty to defend and a duty to indemnify Carter under the terms of the Rental Contract and the Excess Rental Liability Policy. Because we find that Respondents have failed to establish an uncontroverted factual basis to support a legal right to either of these necessary conclusions, we reverse the trial court's grant of summary judgment and remand for further proceedings.

*Principles of Collateral Estoppel*

Collateral estoppel precludes the same parties (or those in privity with them) from relitigating an issue that was previously adjudicated. *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. banc 1979). Before a prior adjudication can be given preclusive effect, four elements must be shown: (1) the issue decided in the prior action was identical to the issue presented in the later action; (2) the prior action resulted in a judgment on the merits; (3) the party against whom estoppel is asserted was a party or was in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *James*, 49 S.W.3d at 682. All elements must be established before collateral estoppel applies. *See Xiaoyan Gu v. Da Hua Hu*, 447 S.W.3d 680, 686 (Mo. App. E.D. 2014). In

determining the applicability of collateral estoppel, "[f]airness is the overriding consideration." *Cox v. Steck*, 992 S.W.2d 221, 224 (Mo. App. E.D. 1999); *see also James*, 49 S.W.3d at 683 ("The doctrine of collateral estoppel will not be applied where to do so would be inequitable.").

Collateral estoppel "does not prevent a party from litigating issues that were never argued or decided as essential to the judgment in the previous proceeding." *Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 126 (Mo. App. E.D. 1999). Collateral estoppel is triggered when "the issue decided in the prior case was *identical* to that in the present action[.]" *Spath v. Norris*, 281 S.W.3d 346, 351 (Mo App. W.D. 2009) (emphasis in original). It is not enough that two claims share common facts if the prior action does not "necessarily and unambiguously" resolve the same question presented in the second proceeding. *Id.* at 351-52.

*Duty to Defend*

In this declaratory judgment action, U-Haul and ARCOA allege that there existed no duty to defend Carter in the underlying personal injury lawsuit under the terms of the Rental Contract and Excess Rental Liability Policy. They rely on Carter's admissions and other misrepresentations made after the collision to support their decision that Carter was not entitled to coverage under the relevant policies.

A central issue raised in this declaratory judgment action is whether the refusal to defend was justified. The answer to this question is critical to Respondents' collateral estoppel argument because, as explained below, the underlying negligence finding against Carter is not binding on U-Haul and ARCOA if the refusal to defend Carter is determined to have been justified. *See Allen*, 512 S.W.3d at 32. Despite the significance of this determination to the success of Respondents' theory, their motion for summary judgment contains no assertion that the refusal to defend Carter

was unjustified, let alone attempts to establish the uncontroverted factual predicate necessary to show the refusal was wrongful.[6]

It is well-settled that an insurer's duty to defend is broader than its duty to indemnify. *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. banc 2015). "An insurer may have a duty to defend claims falling within the policy even if it may not ultimately be obligated to indemnify the insured." *Arch Ins. Co. v. Sunset Fin. Servs., Inc.*, 475 S.W.3d 730, 733 (Mo. App. W.D. 2015) (quoting *Lumber Mut. Ins. Co. v. Reload, Inc.*, 113 S.W.3d 250, 253 (Mo. App. E.D. 2003). "The duty to defend arises from the potential liability to pay based on the facts as they appear at the outset of the case." *Id.* "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (emphasis in original). "The duty to defend is determined by comparing the insurance policy language with facts: '(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case.'" *Allen*, 512 S.W.3d at 31 (quoting *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. banc 2014)).

"An insurer may refuse to defend its insured on the basis that there is no coverage, but the insurer does so at its own risk." *Assurance Co. of Am. v. Secura Ins. Co.*, 384 S.W.3d 224, 233 (Mo. App. E.D. 2012). "Where the insurer had the opportunity to defend the insured but wrongfully refused to do so, '[t]he insurer is precluded from relitigating any facts that actually were determined in the underlying case and were necessary to the judgment.'" *Id.*; *see also Allen*, 512 S.W.3d at 32 ("By filing a declaratory judgment action, the insurer's decision is treated as a refusal

---

[6] Respondents argue that the claims raised in the declaratory judgment action do "not hinge on contract interpretation" and that the negligence determination in the personal injury lawsuit alone is dispositive. We disagree. The declaratory judgment action "hinges" on whether U-Haul and ARCOA had a duty to defend and/or duty to indemnify under the "express terms" of the Rental Contract and the Excess Rental Liability Policy.

8

to defend, and, if determined to be 'unjustified, the insurer is treated as if it waived any control of the defense of the underlying tort action.'").

The underlying personal injury lawsuit addressed only the narrow issue of Carter's liability. There is nothing inherent in that finding that independently mandates a conclusion that the refusal to defend Carter was wrongful. Instead, a comparison is required of the factual allegations made in the underlying suit brought by Respondents against Carter and the facts known to U-Haul and ARCOA at the time they made the decision to refuse to defend – including the signed admission by Carter that the collision was part of a fraudulent scheme to defraud the insurance companies – to the terms of the policies. It is only after the terms of the policies are considered in light of these other facts that it can be determined whether U-Haul and ARCOA's refusal to defend was justified and then, depending on the outcome of that analysis, whether they are bound by the negligence finding in the personal injury case. *See generally Allen*, 512 S.W.3d at 31-33.

Respondents have failed to establish an uncontroverted factual record entitling them to a finding that U-Haul and ARCOA's refusal to defend was not justified under the terms of the policies. This deficiency is fatal to the success of their motion for summary judgment. As previously noted, Respondents never assert in their motion that the refusal to defend was wrongful and provide no factual basis from which to make such a determination. Respondents failed to attach the relevant policies to their motion and, in fact, never reference the policies in their summary judgment papers. Resolution of the question of whether U-Haul and ARCOA's refusal to defend Carter was justified under the terms of the respective policies plainly requires consideration of the terms of those policies. Pursuit of summary judgment under these facts absent the policies requires our finding that Respondents have failed to sustain their burden of establishing a legal right to a judgment that U-Haul and ARCOA's refusal to defend Carter was unjustified and

9

the related finding that U-Haul and ARCOA are bound by the negligence finding made in the personal injury lawsuit.

*Duty to Indemnify*

Respondents' theory that the negligence finding in the personal injury lawsuit (without consideration of the terms of the relevant policies) compels a disposition in their favor on U-Haul and ARCOA's duty to indemnify must also fail. First, it requires that U-Haul and ARCOA are bound by the underlying negligence determination – and we have concluded above that Respondents have failed to establish a factual record entitling them to a favorable finding on that point. Second, and more fundamental, regardless of the preclusive effect ultimately given the prior negligence finding, an examination of the terms of the policies is necessary to resolve the indemnification issue.

The failing in Respondents' singular reliance on the prior negligence finding and their dogged indifference to the terms in the policies is aptly revealed by U-Haul and ARCOA. U-Haul and ARCOA assert that, even if the underlying negligence determination is found to be binding on them, the coverage questions raised in this declaratory judgment action can still be resolved in their favor without disturbing that finding.[7] In other words, they argue the negligence finding made in the personal injury lawsuit would not preclude a finding of no coverage under the terms of the policies. They posit that Carter can be found to have engaged in conduct of a nature that excluded coverage under either or both of the policies while also having negligently caused the collision. While this path may be narrow, U-Haul and ARCOA are correct that they are not mutually

---

[7] U-Haul and ARCOA argue on appeal, as they did below, that "[t]he petition in [the declaratory judgment action] does not seek to relitigate or disturb the prior finding of negligence [in the personal injury judgment]….[However, the judgment] in the personal injury action did not address (and the finding of negligence does not resolve) the question of whether Carter's negligence *in conjunction with the fraud* committed by Carter…renders the Appellants' obligation to…indemnify Carter pursuant to the [insurance policies] invalid."

exclusive propositions.[8] Thus, even if Respondents are able to establish that the refusal to defend Carter in the underlying personal injury lawsuit was not justified and principles of estoppel are properly found to bar relitigation of the underlying negligence finding, that negligence finding alone would not entitle Respondents to summary judgment on the question of whether U-Haul and ARCOA have a duty to indemnify Carter. *See Allen*, 512 S.W.3d at 33 (the underlying judgment is only conclusive in a later action as to those facts and issues actually litigated and necessarily determined). Instead, specific examination of the terms of the Rental Contract and Excess Rental Liability Policy would be necessary – an exercise that (we repeat) Respondents wholly ignore in their motion for summary judgment. As a result, Respondents' motion for summary judgment does not establish a legal right to a judgment that U-Haul and ARCOA have a duty to indemnify under the terms of the specific policies.

For the foregoing reasons, we find the trial court erred in granting summary judgment.

*U-Haul and ARCOA's Motions for Default Judgment*

Given our conclusion that the summary judgment record does not support application of the doctrine of collateral estoppel against U-Haul and ARCOA, it follows that collateral estoppel cannot serve as the basis for denying U-Haul and ARCOA's motions for default judgment against Carter and Dawson. On remand, the trial court may revisit U-Haul and ARCOA's motions for default judgment against Carter and Dawson in light of this opinion.

---

[8] For example, Carter could be shown to have made a false or fraudulent claim (an exclusion under the Rental Contract) or intentionally concealed or misrepresented a material fact (an exclusion under the Excess Rental Liability Policy) *and* have "negligently operated the motor vehicle he was driving on or about April 28, 2014, and such negligence directly resulted in bodily injury to" Respondents. And, unlike Respondents, U-Haul and ARCOA rely on provisions in the policies to support their theory.

## Conclusion

We reverse the trial court's judgment granting summary judgment and denying U-Haul and ARCOA's motions for default judgment on collateral estoppel grounds, and remand for further proceedings consistent with this opinion.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.