

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

LINDA R. ZWEIFEL,                              )    No. ED107451
n/k/a LINDA R. SMITH,                          )
                                               )    Appeal from the Circuit Court
      Respondent,          )    of Jefferson County
vs.                                            )
                                               )    Hon. Antonio M. Manansala
RANDALL ZWEIFEL,                               )
                                               )    Filed:
      Appellant.           )    January 28, 2020

Randall Zweifel appeals from the contempt judgment entered against him for conduct his ex-wife Linda Smith claimed violated the dissolution judgments. We reverse.

## Background

Zweifel and Smith jointly owned and operated Lawn Managers, Inc. during their marriage. The marriage dissolved, and the parties reached an agreement regarding their business interests, among other things. The parties' Marital Settlement Agreement was incorporated into the dissolution judgment dated May 1, 2012 (collectively the agreement and judgment will be referred to as "2012 MSA and Judgment"). Therein, it was agreed that Smith would assign all of her shares in the lawn care business to Zweifel, which would continue under the name "Lawn Managers, Inc.," and Smith would establish a new lawn care company. In Section 5.02, the parties divided the accounts and accounts receivable of the business. They were each awarded certain commercial accounts and accounts receivable; Smith was "awarded all right, title, and interest in all residential accounts and

accounts receivable in the following zip codes," and then 19 zip codes were listed. Zweifel was similarly "awarded all right, title, and interest in all residential accounts and accounts receivable" in 54 zip codes.

In Section 5.06, the parties addressed "Development of New Business." Therein, Smith agreed that her new lawn care business would use the name "Progressive Lawn Managers, Inc., doing business as Lawn Managers" for a period of no more than two years and would thereafter stop using the name "Lawn Managers" and use only the name "Progressive Lawn Managers, Inc." In that same section, the parties included a non-solicitation agreement:

> For a period of two years from that date of dissolution of marriage [Smith] and her employees will refrain from soliciting residential accounts and commercial accounts in the zip codes that have been awarded to [Zweifel] in Section 5.02(2)(b), and [Zweifel] and his employees will refrain from soliciting residential accounts and commercial accounts in the zip codes that have been awarded to [Smith] in Section 5.02(2)(b). [Smith] and [Zwefiel] understand that the agreement to refrain from soliciting business in the zip codes awarded to the other party includes business for lawn care services, fertilization, weed control, insect control, and other types of lawn service.

There appears to never have been any dispute that under the above terms of the 2012 MSA and Judgment, the parties were: (1) each awarded a number of *existing* commercial accounts and a number of *existing* residential accounts in identified zip codes and (2) each had the exclusive right to solicit *new* commercial or residential accounts in those zip codes, at least for two years. There was, however, disagreement as to the meaning of "solicit" in Section 5.06. When residential customers in Smith's zip codes contacted Zweifel for service, he began servicing them, claiming to believe that because he did not "solicit" their business he was not violating the 2012 Judgment. It appears that some of those 72 customers he began servicing were existing accounts awarded to Smith in Section

5.02 and some of them were new accounts covered by the non-solicitation provision in Section 5.06.

In October of 2013, Smith filed a motion for contempt, alleging that Zweifel solicited and serviced accounts that had been awarded to her in violation of Section 5.02 and the non-solicitation provision of Section 5.06.[1] Zweifel filed a cross-motion for contempt alleging Smith was engaged in similar behavior. Ultimately, the parties reached an agreement settling the issues in these motions on July 25, 2014. The terms of that agreement were entered as the judgment of the court (collectively this agreement and judgment will be referred to as "2014 Settlement and Judgment"). Therein, the parties agreed that "each may sign up and service new commercial accounts wherever they may be, regardless of zip code." As to residential accounts, the parties agreed as follows:

> Parties agree that each of them shall NOT sign up or service any new residential accounts in the zip codes awarded to the other in [the 2012 MSA and Judgment]. This non-compete agreement shall remain in effect for two years from today's date and is enacted in lieu of the prior non-solicitation clause found in paragraph 5.06 of [the 2012 Judgment].[2]

Zweifel also agreed to transfer to Smith "all of his existing residential customers" in two of the zip codes that had been awarded to him in 2012, and these zip codes were expressly covered by the non-competition provision above. Otherwise, the parties agreed, "[a]ll other terms of [the 2012 MSA and Judgment] shall remain in full force and effect." It was also agreed that Smith would stop using the name "Lawn Managers" on December 31, 2014 and thereafter use only the name "Progressive Lawn Managers, Inc." for her business.

---

[1] Several months earlier, Zweifel was held in contempt of the 2012 MSA and Judgment, on Smith's motion, for failing to make a certain payment thereunder. He successfully purged himself of that contempt by making the payment.

[2] We note the two-year non-solicitation clause in Section 5.06 of the 2012 MSA and Judgment—which this non-compete was said to replace—had actually already expired on May 1, 2014 by its own terms.

In February of 2016, Zweifel's company filed a trademark infringement claim in federal court, alleging that Smith's company was continuing to use his company's name in violation of the parties' agreement. While that case was pending, the two-year non-compete in the 2014 Settlement and Judgment expired on July 25, 2016. The parties agreed this meant that they were no longer prohibited from signing up or servicing *new* residential customers in the other's zip codes. But it became evident that they disagreed about whether they could also begin to compete for the *existing* residential accounts that had been awarded to the other party. It appears Zweifel believed that once the non-solicitation and non-compete expired, all customers were fair game and he sent a "We Want You Back" letter to customer accounts that had been awarded to Smith. It appears Smith disagreed, and believed there was a permanent non-compete on the existing customer accounts each was awarded. She asserted an affirmative defense of unclean hands in the federal trademark infringement case based on the "We Want You Back" letter and Zweifel's continued service of the 72 residential customers that contacted him years earlier. Smith also filed another motion for contempt in state court and a separate request for injunctive relief based on that conduct.

The state court issued a temporary restraining order prohibiting Zweifel from contacting, soliciting or providing services to "any of the customers and/or accounts awarded to [Smith]" in either 2012 or 2014. On Zweifel's motion to clarify, the TRO was modified to provide that Zweifel was permitted to respond to a specific list of customers who contacted him after the "We Want You Back" letter by notifying them that he could not service their accounts at this time and could not discuss the matter further. The TRO,

4

as modified, was converted to a preliminary injunction on November 18, 2016, after a hearing.

Smith then amended her latest motion for contempt in October of 2017. Zweifel asserted affirmative defenses, one of which was that any claims in this motion for contempt relating to his continued servicing of the 72 customers were precluded under principles of res judicata because they were previously fully adjudicated in the proceedings to resolve the parties' earlier cross-motions for contempt, which resulted in the 2014 Settlement and Judgment. Zweifel also filed counterclaims for, among other things, damages based on improvidently granted injunctive relief. A bench trial was held over the course of several days in February, March and April of 2018.

Shortly after the contempt trial ended in state court but before a decision was reached, the federal court ruled on the trademark infringement case. It entered judgment finding that Smith had infringed by using the "Lawn Managers" name and, in assessing damages, concluded that Zweifel did not have unclean hands because the non-competition provision had expired by the time he sent the "We Want You Back" letter. Zweifel sought to have the state court reopen the evidence in the contempt case, arguing that this federal judgment must be given collateral estoppel effect and precluded the state court from finding him in contempt for conduct the federal court found was permissible. That motion to reopen was denied.

In November of 2018, the court entered the judgment that is now on appeal, granting the amended motion for contempt and denying all defenses and counterclaims. It concluded that Section 5.02 of the 2012 MSA and Judgment—dividing the commercial and residential accounts and accounts receivable—was a division of business assets, which

like any division of marital property, is "not subject to modification." The court concluded that the parties have and "will continue to have, in perpetuity, a property interest" in the customer accounts awarded to each of them in 2012 and 2014. The court found the 2012 MSA and Judgment and the 2014 Settlement and Judgment obligated Zweifel "to only service zip code accounts that were awarded as property to [him]. . . and not to service zip code accounts awarded as property to [Smith]." The non-solicitation and non-competition provisions therein, it concluded, applied only to "new business" and not the customer accounts awarded in the division of property. Once those provisions expired, the court found, the parties were permitted to solicit *new* business in any zip code, but could not "solicit the customer accounts awarded to the parties" in 2012 and 2014. Thus, the court held Zweifel in contempt for servicing existing residential accounts in Smith's zip codes and soliciting Smith's existing residential accounts with the "We Want You Back" letter— all in violation of the 2012 MSA and Judgment and the 2014 Settlement and Judgment. The court also found that since 2014, Zweifel solicited, signed up and serviced new residential accounts in zip codes awarded to Smith in violation of the non-compete in the 2014 Settlement and Judgment. The court found Zweifel's conduct to be intentional and contumacious. The court ordered him to pay Smith damages in the amount of $415,381.72, based on her lost profits, and attorney fees. This appeal follows.

## Scope of Appeal

Zweifel raises six points of error in which he challenges various aspects of the contempt judgment on different theories. We note at the outset that this appeal does not involve commercial accounts, as all of the conduct the court held was contemptuous related to residential customers. It does not involve Zweifel's conduct with respect to *new*

6

residential accounts: Zweifel has not raised any point on appeal challenging the court's finding that while the non-compete in the 2014 Settlement and Judgment was in effect, he solicited, signed up and serviced new residential customers in Smith's zip codes. Rather, all of the issues on appeal relate solely to Zweifel's soliciting and servicing of residential customer accounts that existed at the time of the dissolution and were awarded to Smith.

In his first point on appeal, Zweifel contends the federal trademark judgment was a conclusive determination that he was permitted to send the "We Want You Back" letter to the Smith's customers after the expiration of the two-year non-compete in the 2014 Settlement and Judgment, which he claims is dispositive of the issue of whether Smith had a permanent non-compete as to those customers and whether sending the letter violated such a provision. In his fourth point on appeal, he similarly contends that any claims regarding his servicing of the 72 customers who came to him had been fully and conclusively resolved in his favor by the 2014 Settlement and Judgment and could not be re-litigated in this later motion for contempt. In essence, Zwefiel asserts that these two previous adjudications are dispositive of the issues and claims here and require a finding by this Court that his conduct in sending the letter and servicing those 72 customer accounts did *not* violate the 2012 MSA and Judgment or the 2014 Settlement and Judgment. We disagree that such a definitive finding of "no contempt" is appropriate here. Rather, we agree with Zweifel's alternative basis for reversal, set out in his second point on appeal: that the provision of the 2012 MSA and Judgment and the 2014 Settlement and Judgment are too vague and indefinite as to his obligations regarding the existing customer accounts awarded to Smith for him to be held in contempt thereof. Granting the second point on appeal, renders his third and fifth points on appeal moot. In his sixth and final point on

7

appeal, Zweifel argues that if we reverse, we must also deem the preliminary injunction to have been improvidently granted, which we do not believe is warranted here.

## Discussion

We take the points on appeal somewhat out of order, beginning with the preclusive effect of certain prior judgments on the issues and claims in this matter. The underlying question as to whether an issue is barred by a prior judgment is a question of law. *See Bresnahan v. May Department Stores Company* 726 S.W.2d 327, 329 (Mo. banc 1987). Otherwise, our review of the contempt judgment is the same as in any court-tried matter: we will affirm a civil contempt judgment unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence or the decision erroneously declares or applies the law. *Wuebbeling v. Wuebbeling*, 574 S.W.3d 317, 327 (Mo. App. E.D. 2019). "Further, this Court will not reverse the trial court's ruling on a civil contempt motion absent a clear abuse of discretion." *Id*.

### Preclusion

Zweifel contends the judgment entered in his company's federal trademark infringement case against Smith's company conclusively determined the meaning of the 2012 MSA and Judgment and the 2014 Settlement and Judgment and precluded a different finding about the obligations thereunder by the trial court in this contempt case.[3] The claim of infringement in the federal case was based on Smith's continued use of Zweifel's company name.[4] Smith asserted the affirmative defense of unclean hands, claiming that

---

[3] Smith notes that Zweifel moved this Court on appeal to suspend the briefing schedule while the federal court's judgment is pending on appeal, raising the same collateral estoppel arguments raised in this point. We denied that motion without explanation and do not consider that denial to be determinative of the merits of whether the federal judgment has a preclusive effect on this issue.

[4] The record before us regarding the federal trademark case consists solely of the federal court's judgment and memorandum opinion and the proposed findings and conclusions submitted to the federal court by both parties in that case. The appendix to Smith's brief contains additional pleadings purportedly filed in that

8

Zweifel's solicitation of customers in her zip codes in July of 2016—namely, sending the "We Want You Back" letter—was a violation of the 2014 non-compete and should bar his trademark infringement claim. In its judgment, the federal court addressed the unclean hands defense only in the context of assessing damages:

> The Court previously stated it would consider [Smith's] unclean hands defense when assessing damages. [Smith] claims that [Zweifel's] advertisement to customers in [her] zip code areas in July 2016 sullied [his] hands in this suit. Under Missouri law, the protection of customer accounts, lists, or relationships is assumed to be limited in duration, unless a party demonstrates "unequivocally" that both parties intended it to run perpetually. *See, e.g., Armstrong Business Services, Inc. v. H & R Block*, 96 S.W.3d 867, 875 (Mo. App. W.D. 2002). Rather than any such indicator of perpetual intent, both the 2012 [MSA and Judgment] and the 2014 [Settlement and] Judgment expressly limited the non-solicitation and non-compete provisions to a term of years. Accordingly, [Zweifel] was entitled to renew advertising to customers following the expiration of the 2014 [Settlement and] Judgment's non-compete provision in July 2016, and this advertisement did not sully [his] hands in a suit for trademark infringement. [Smith] produced no other evidence to support a finding that [Zweifel] acted inequitably toward it as to the trademark at issue.

Collateral estoppel—or issue preclusion, as it is known in modern terms—precludes the same parties (or those in privity with them) from re-litigating an issue that was previously adjudicated. *U-Haul Company of Missouri v. Carter*, 567 S.W.3d 680, 684–85 (Mo. App. W.D. 2019). For collateral estoppel to apply, the prior action must have necessarily and unambiguously resolved the same question presented in the second proceeding. *Id.* at 685; *see also Trow v. Worley* 40 S.W.3d 417, 422 (Mo App. S.D. 2001). The overriding factor is a consideration of whether it would be fair to apply collateral estoppel in this particular case. *James v. Paul*, 49 S.W.3d 678, 688 (Mo. banc 2001). The

case, but those documents are not part of the record in this appeal and are not made part of the record simply by including them in the appendix. We do not consider documents in an appendix that are not in the record on appeal. *Washington v. Blackburn*, 286 S.W.3d 818, 822 (Mo. App. E.D. 2009).

analysis must focus primarily on principles of equity derived from the facts of each case, and collateral estoppel will not be applied where to do so would be inequitable. *Id*.; *see also Wilkes v. St. Paul Fire and Marine Insurance Company*, 92 S.W.3d 116, 123 (Mo. App. E.D. 2002).

It would not be fair to apply collateral estoppel in this case. The contempt and trademark infringement cases were proceeding simultaneously, and both the federal and the state court took pains to ensure that nothing they did in one case improperly impacted the other. The federal court found it was permitted to interpret the provisions of the 2012 MSA and Judgment and the 2014 Settlement and Judgment, stating it was doing so under principles of Missouri contract law and consistently with federal trademark law and the parties' intentions. But, it also expressly stated that it was "not the proper forum to re-litigate Smith's and Zweifel's divorce proceedings or otherwise encroach on the state court's jurisdiction over domestic matters" and that "nothing in this Court's decision purports to set aside or alter" the terms of the 2012 MSA and Judgment and the 2014 Settlement and Judgment. Likewise, the state court in the contempt case stated—in its denial of the motion to reopen evidence and in its final judgment in this case—that "[n]othing in this Court's decision purports to set aside or alter" the federal court's judgment.

Moreover, the federal court did not assess Zweifel's conduct in the context of whether it was contemptuous. As discussed in greater detail later in this opinion, one cannot be held in contempt of a court order unless that order is "so definite and specific as to leave no reasonable basis for doubt of its meaning." *Wuebbeling,* 574 S.W.3d at 327–28. The federal court did not analyze the 2012 MSA and Judgment and the 2014

10

Settlement and Judgment under this strict standard and therefore the conclusions that court drew about the provisions therein—and whether Zweifel's conduct was permitted thereunder—do not *unambiguously* answer the identical question presented to the contempt court. Fairness dictates that those conclusions should not supplant the state court's examination of what precisely was prohibited in that court's judgments and whether Zweifel was in contempt. Under these circumstances, it would be inequitable for us to give the federal judgment preclusive effect and hold that it is dispositive of whether the 2012 MSA and Judgment and the 2014 Settlement and Judgment permitted sending the "We Want You Back" letter.

Point I is denied.

In a similar argument, Zweifel contends Smith should have been barred under the doctrine of res judicata (also known as claim preclusion) from re-litigating claims relating to the 72 customers who he began servicing after 2012 when they approached him. He contends all such claims were resolved by the 2014 Settlement and Judgment reflecting resolution of their 2013 cross-motions for contempt. Of course, those earlier proceedings addressed only the conduct that occurred prior to the 2014 Settlement and Judgment; the current motion for contempt alleged that he *continued* servicing those 72 customers *after* the 2014 Settlement and Judgment. Zweifel's argument as to why Smith is precluded from litigating these claims is difficult to follow, but appears to be premised on the notion that he somehow was awarded those 72 customer accounts during the proceedings on those 2013 cross motions for contempt. He claims to have "already had" those 72 customer accounts at the time the parties settled those motions and by virtue of that settlement, Smith agreed she had been fully compensated for any claim relating to those customers. Thus,

11

the argument continues, he was not violating the 2014 Settlement and Judgment when he continued to service the "accounts that he had" at that time and "retained after that date." Zweifel has pointed to nothing in the record that indicates these 72 customers became Zweifel's property at any point—prior to, during or after the 2014 Settlement and Judgment—and the argument based on that unsupported factual assertion is therefore without merit.

Point IV is denied.

**<u>Contempt</u>**

Alternative to his argument that the above judgments compel the conclusion that Zweifel's conduct was permissible under the 2012 MSA and Judgment and the 2014 Settlement and Judgment, he contends his conduct was not clearly and unambiguously prohibited thereunder and thus he could not be held in contempt of those judgments. We agree that there was no explicit directive in the 2012 MSA and Judgment and the 2014 Settlement and Judgment regarding the parties' obligations with respect to existing residential customers, which required the trial court to find a prohibition of Zweifel's conduct by implication. The court did not have authority to hold him contempt under these circumstances.

"Contempt is available only where a party has been ordered to perform or not to perform a specific act and yet refuses to do so." *State ex rel. Euclid Plaza Associates, L.L.C. v. Mason*, 81 S.W.3d 573, 577 (Mo. App. E.D. 2002). Our Court recently reiterated the limitations on a court's authority to hold a party in contempt of a court order, concluding that "clarity in the order itself is essential so the process may comport with fundamental principles of fairness":

12

> To support a charge of contempt for disobedience of a judgment, decree or order, the court's pronouncement may not be expanded by implication in the contempt proceeding and must be so definite and specific as to leave no reasonable basis for doubt of its meaning. Before a court may impose sanctions on a party for disobeying a court order, the order itself must precisely advise the individual of what conduct is forbidden.

*Wuebbeling*, 574 S.W.3d at 328 (internal quotation marks and citations omitted). Thus, the finding of contempt must be predicated on a clear, unambiguous and express directive of the court explicitly mandating or prohibiting the conduct at issue. *See id*. at 328-29. If the provision on which the contempt court relies is too vague, any mandate for or prohibition against the conduct at issue could only be found by implication. *See id*. at 328-30. Expanding an earlier pronouncement by implication exceeds the court's authority in a contempt proceeding, and a contempt judgment that relies on such an implication must be reversed. *See id.*; *see also Missouri Hospital Association v. Air Conservation Commission*, 900 S.W.2d 263, 267 (Mo. App. W.D. 1995).

Here, Zweifel does not challenge the court's findings regarding the conduct he engaged in—namely, that he solicited and serviced existing residential accounts awarded to Smith in 2012 and 2014—only the conclusion that this conduct violated a clear and unambiguous provision of either of those judgments. According to the trial court, the parties were forever prohibited from soliciting or servicing those accounts. The court's conclusion that such a prohibition existed appears to have been derived from a series of inferences drawn from the actual language of the judgment. The court began by finding the existing residential customer accounts were business assets and were properly divided as marital property in Section 5.02 of the 2012 MSA and Judgment. Therefore, like any other division of property, the court found it was not subject to modification. It appears the court then concluded that the non-modifiable nature of a division of marital property

equated to the parties having "in perpetuity, a property interest" in the accounts they were awarded. The court also construed the two-year non-solicitation provision in the 2012 MSA and Judgment as applicable only to "new business," and noted that the two-year non-compete in the 2014 Settlement and Judgment was expressly applicable only to new accounts. The court then seems to have implied—from both the perpetual property interest and its conclusion that the two-year non-solicitation and non-competition provisions only applied to new business—that there was a permanent ban on the parties' ability to ever compete for each other's existing customer accounts.

None of the provisions relied on by the court to reach this conclusion contain a clear, unambiguous and express directive that explicitly and permanently prohibits solicitation and servicing of the existing residential accounts awarded to the other party. In Section 5.02 in the 2012 MSA and Judgment, the parties agreed to give each other "all right, title and interest" in certain customer accounts. Even assuming "customer accounts" have value and are capable of division like other business assets, that fact does not necessarily mean that they must be treated like other business assets for all intents and purposes. Contrary to Smith's claim that the division of accounts is analogous to the division of the lawn care company's vehicles, it is at least arguable that there are fundamental differences between an award of an inanimate object like a truck and an award of customer account, which necessarily involved a relationship with another person. An award of a business asset like a truck may be permanent in the sense that the other party would be forever barred from taking it back, but it is at least reasonable to doubt that the same is true with an award of a business relationship. A truck, of course, has no interest in or ability to decide who owns it, but the customers whose accounts were awarded to these

14

parties do have an interest in who services their lawns—an interest recognized by the court when it found that the 2012 MSA and Judgment did not prohibit the customers awarded to Smith and Zweifel from seeking out lawn care services from companies *other than* the parties' companies. In short, there is a reasonable basis to doubt what was meant by the award of these accounts in Section 5.02 and whether it included a perpetual property interest to the parties in the existing customer accounts and an attending permanent ban on efforts to regain those customer's business.

Smith cites a provision in the 2012 MSA and Judgment in which the parties agreed that if either of them "wishes to sell" any of the accounts referenced in Section 5.02, they "will give the other party the first opportunity to purchase the accounts that are up for sale." She then asks why such a provision would be included if the parties did not intend to have a perpetual property interest in the accounts awarded to them in Section 5.02. She also cites to an administrative provision of the 2012 MSA and Judgment containing the following language: "This Agreement shall be binding on the heirs, representatives, and assigns of the parties except as to the specific paragraphs that contain provisions for termination of obligations on the death of either party." And, again, she asks why such a provision would be included if the parties did not intend to have a property right over the accounts awarded to them in perpetuity in Section 5.02. Beyond positing the questions, Smith has not demonstrated that these provisions contain a clear and unambiguous permanent prohibition on competition with the existing residential customer accounts awarded to each party in Section 5.02

Likewise, there is considerable reason to doubt that by expressly imposing a two-year ban on solicitation and competition for new accounts in the 2012 MSA and Judgment

and the 2014 Settlement and Judgment, there was an intent to impose a permanent ban on such conduct with respect to the existing accounts awarded to each other. One simply does not necessarily follow from the other. If the non-solicitation and non-compete only apply to new customers, then it is at least arguable that rather than implying a *permanent* ban on competing for existing customer, there was *no* such ban on competition for those customers at any point. If there was never any such restriction, then one could argue that the day after the customers were divided in Section 5.02 of the 2012 MSA and Judgment, the parties were entitled to immediately compete for their business. As much as there is reason to doubt the existence of a permanent ban on competition for these accounts, there would be equal reason to doubt that no ban existed either. Neither of these extremes—both of which are possible under the trial court's interpretation—is supported by the actual language in the 2012 MSA and Judgment or the 2014 Settlement and Judgment. Because the judgments do not clearly and unambiguously set forth any particular directive with respect to one party's conduct with the existing customer accounts awarded to the other, the court's permanent prohibition on competition with those customers was imposed by implication. It was impermissible to hold Zweifel in contempt of that implied provision. *See Wuebbeling*, 574 S.W.3d at 328.

Importantly, we note that we are not tasked in this appeal with clarifying any of the doubts discussed herein. Nor should anything in the above discussion be taken as a dispositive conclusion about the actual meaning of the 2012 MSA and Judgment or the 2014 Settlement and Judgment. Rather, we are faced with a much narrower question in determining the propriety of this contempt judgment: whether the provisions of the 2012 MSA and Judgment or the 2014 Settlement and Judgment were specific and definite

16

enough such that Zweifel could be held in contempt thereof. Our conclusion on that question is that they were not and therefore it was error to hold him in contempt for soliciting and servicing the existing residential accounts awarded to Smith. In other words, we do not conclude that Zweifel's conduct was permissible under the 2012 MSA and Judgment or the 2014 Settlement and Judgment—only that the judgments are too vague for the trial court to have determined that the conduct was contemptuous.

Point II is granted. The judgment must be reversed to the extent it holds Zweifel in contempt for soliciting and servicing existing customer accounts awarded to Smith in the 2012 MSA and Judgment and the 2014 Settlement and Judgment. Reversal of that finding of contempt renders the following points on appeal moot: Point III (challenging the award of damages based on that contempt finding) and Point V (challenging the evidence of a factual matter underlying that contempt finding).

**Improvidently Granted Injunctive Relief**

Zweifel filed in the trial court a counterclaim to the motion for contempt, claiming the preliminary injunction was improvidently granted and seeking damages. He argues that "if this Court rules that Smith never had a permanent, perpetual non-compete," then that means the preliminary injunction was improvidently granted and the matter must be remanded to the trial court to dissolve that injunction and determine his damages. A definitive holding that Smith did not have a permanent non-compete and therefore Zweifel's conduct was permissible under the judgments might have, as Zweifel suggests, automatically resulted in a conclusion that the injunction prohibiting that conduct was improvidently granted and is therefore dissolved. *See generally Citizens for Ground Water Protection v. Porter*, 275 S.W.3d 329, 352 (Mo. App. S.D. 2008) (when party procuring

temporary injunctive relief ultimately receives an adverse judgment on the merits of the case, the issuance of the injunction is deemed improper and is dissolved). But we have not made any definitive conclusions about the meaning of the 2012 MSA and Judgment or the 2014 Settlement and Judgment. Again, our conclusion is that those judgments were not clear as to the parties' obligations and restrictions regarding the existing residential customers awarded to each of them. While this conclusion means that Zweifel cannot be held in contempt of the 2012 MSA and Judgment or the 2014 Settlement and Judgment, that is not the same as a dispositive holding that his conduct was permissible under those judgments. Zweifel has not cited any authority that would support deeming the preliminary injunction improvident and dissolving it under these circumstances.

Point VI is denied.

## Conclusion

The judgment is reversed to the extent it holds Zweifel in contempt for soliciting and servicing existing customer accounts awarded to Smith in the 2012 MSA and Judgment and the 2014 Settlement and Judgment.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Roy L. Richter, J., concur.