

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **JIM PLUNKETT, INC., AND REGENT INSURANCE COMPANY,** | **WD79210** |
| **Appellants,** | **OPINION FILED:** |
| **v.** | **September 13, 2016** |
| **MICHAEL ARD (DECEASED); VICTORIA ARD,** | |
| **Respondents.** | |

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### Before Division Four:  Mark D. Pfeiffer, Chief Judge Presiding, James Edward Welsh, and Edward R. Ardini, Jr., Judges

Jim Plunkett, Inc., and Regent Insurance Company[1] appeal from the Labor and Industrial Relations Commission's determination that they were liable for permanent partial disability benefits due to an injury Michael Ard (now deceased) sustained while at work and that the personal representative of Ard's estate is entitled to the accrued and unpaid compensation due Ard in the amount of $99,333.00 plus interest.  Plunkett contends that the Commission failed to make factual findings supporting the award of permanent partial disability benefits as required

---

[1]We refer to Jim Plunkett, Inc., and Regent Insurance Company collectively as Plunkett.

by section 287.460.1, RSMo Cum. Supp. 2013, and that the Commission erred in awarding Ard's personal representative both accrued and unaccrued benefits.  We affirm.

Ard worked for Jim Plunkett, Inc., removing window frames, installing window frames, and installing glass.  On October 15, 2010, large plates of glass fell upon Ard causing multiple injuries, including a pubic fracture, pelvic fracture, sacral fracture, a right displaced distal fibula fracture, instability of the ankle joint, and left-sided rib fractures.  On October 16, 2010, Dr. David Paul performed an open reduction and internal fixation for Ard's right distal fibular fracture.  Thereafter, Ard's care and treatment was transferred to Dr. Christopher Wise, an orthopedic trauma surgeon, for treatment of Ard's pelvic and sacral fractures.  On October 18, 2010, Dr. Wise performed a manipulation of Ard's pubic fracture and found that the pubic fracture was stable and that no internal fixation was necessary.  For the sacral fracture, Dr. Wise inserted a screw across the fracture to hold it in place.

From October 21 through October 29, 2010, Ard was in an inpatient rehabilitation unit at North Kansas City Hospital.  After discharge from the rehabilitation unit, Ard continued to follow up with Dr. Wise for medical treatment following his injuries.  Ard complained about right foot pain and left shoulder pain during visits to Dr. Wise.  An MRI scan of Ard's left shoulder revealed a comminuted distal clavicle fracture with evidence of intermediate to high grade sprain of the acromioclavicular joint, a non-displaced fracture of the humeral head and neck, mild biceps pulley tendinopathy without a rupture, supraspinatus tendinopathy without full thickness tear, and signal alteration of the labrum consistent with possible partial injury.  Dr. Wise recommended non-operative treatment with rehabilitation and referred Ard to ARC Physical Therapy for treatment.

On December 15, 2010, Dr. Wise determined that Ard was able to return to work performing "sitting work." Ard returned to work at the end of December 2010 and worked in the office. On April 6, 2011, Dr. Wise released Ard at maximum medical improvement with a 50 pound weight lifting restriction.[2] Dr. Wise imposed no limitations on squatting, crawling, kneeling, climbing, pushing, pulling, standing, walking, or sitting. Ultimately, Dr. Wise determined that Ard sustained a 12 percent disability to the body as a whole.

Following Dr. Wise's release, Ard went to Dr. James Zarr, a board certified physician in physical medicine and rehabilitation and electrodiagnostic medicine, for pain management. (TR. 1506). Dr. Zarr evaluated Ard on three separate occasions and determined that the restrictions imposed by Dr. Wise were appropriate and that Ard could return to work within those restrictions. Dr. Zarr determined that Ard sustained a 20 percent permanent partial disability to the body as a whole.

On July 23, 2011, Dr. Brent Koprivica evaluated Ard. Under a hypothetical where a vocational expert would conclude that Ard was not totally disabled, Koprivica assigned a global 65 percent permanent partial disability to the body as a whole. According to Koprivica, the combined disability considered the synergism of combining the multiple physical impairments attributable to the October 15, 2010 work accident.

The Division of Worker's Compensation Administrative Law Judge held a hearing on August 23, 2013, on Ard's timely filed claim for worker's compensation. Before the case was decided, Ard was murdered on September 14, 2013. Ard died intestate. The Circuit Court of

---

[2]Ard claimed that he was laid off from his job with Plunkett on April 8, 2011, because work was slow. Plunkett claims that he was terminated because he violated safety rules.

Jackson County subsequently appointed Ard's father, Gilbert Ard, personal representative of Ard's estate.

After Ard's death, the parties filed a motion with the ALJ to determine dependency pursuant to section 287.230, RSMo Cum. Supp. 2013, and section 287.240, RSMo 2000. The ALJ held a hearing on the motion, and Victoria A. Ard appeared at the hearing through her attorney. Victoria Ard asserted that she was married to Ard at the time of his injury and death and that, therefore, she was Ard's dependent. The evidence established that Victoria Ard married David Pflugradt in 1992, and that the marriage was never dissolved or otherwise nullified prior to Victoria Ard marrying Ard in September of 2001. At the hearing, Victoria Ard introduced an exhibit into evidence establishing that, on January 27, 2014, the Circuit Court of Jackson County annulled her marriage to Pflugradt. The ALJ determined that, based upon the decree and order of the Jackson County Circuit Court, the marriage of Victoria Ard and Pflugradt was void and was invalid from its inception because Pflugradt lacked the capacity to contract under state law. The ALJ, therefore, determined that Victoria Ard was the dependent of Michael Ard.

As to permanent partial disability benefits, the ALJ determined that Ard had a permanent partial disability impairment of 65 percent to the body as a whole based on the rating of Dr. Koprivica. In making such determination, the ALJ stated in his conclusions of law, "I find Dr. Koprivica's opinion to be credible on the body as a whole rating." The ALJ further found that Dr. Wise's and Dr. Zarr's disability ratings lacked credibility. The ALJ concluded that Plunkett was liable for permanent partial disability benefits in the amount of $99,333.00.

Plunkett and the personal representative of Ard's estate appealed this decision to the Labor and Industrial Relations Commission. On October 22, 2015, the Commission reversed the ALJ's finding that Victoria Ard was Ard's dependent and awarded all payable benefits to Ard's

4

personal representative.[3]   The Commission affirmed the ALJ's award of accrued and unpaid compensation due Ard in the amount of $99,333.00 and incorporated the ALJ's award and decision to the extent that it was not inconsistent with the Commission's decision and award. Plunkett appeals.

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo 2000.  Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record."[4] Under section 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award.  In determining whether the award is supported by sufficient competent and substantial evidence, i.e., is contrary to the overwhelming weight of the evidence, we examine the evidence in the context of the whole record, viewing the evidence objectively. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc

---

[3]Ard's estate filed motions with the Commission asking to submit additional evidence regarding Victoria Ard's and Pflugradt's marriage.  The Commission accepted two exhibits into evidence.  The first exhibit established that the judgment and decree of annulment, which was entered by the Jackson County Circuit Court pertaining to the marriage of Victoria Ard and Pflugradt, had been set aside and vacated by the Jackson County Circuit Court on September 15, 2014.  The second exhibit established that, the Jackson County Circuit Court issued a judgment denying Victoria Ard's petition for declaration of invalidity of marriage on February 5, 2015.  Based upon this evidence, the Commission concluded that Victoria Ard remains married to Pflugradt and that she is not Ard's dependent.  No one appeals from this determination.

[4]We review the findings of the Commission and not those of the ALJ.  *Arciga v. AT & T*, 366 S.W.3d 91, 94 (Mo. App. 2012).  However, where the Commission's award attaches and incorporates the ALJ's award and decision, as in this case, we consider the findings and conclusions of the Commission as including the ALJ's award. *Id*.

5

2003). In the absence of fraud, however, the Commission's findings of fact are "conclusive and binding." § 287.495.1. Thus, we ""defer to the commission's finding on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence.'" *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). We review issues of law *de novo*. *Id*.

In its first point on appeal, Plunkett contends that the Commission failed to make factual findings supporting the award of permanent partial disability benefits as required by section 287.460.1.

"Section 287.460.1 mandates that an award in a contested workers' compensation case be accompanied by findings of fact and conclusions of law." *Stegman v. Grand River Reg'l Ambulance Dist.*, 274 S.W.3d 529, 533 (Mo. App. 2008). "The Missouri Supreme Court has declared that such statutory requirements contemplate an unequivocal affirmative finding as to what the pertinent facts are." *Id*. (citation and internal quotation marks omitted). "The factual findings are necessary so that we can know what a decision means before the duty becomes ours to say whether it is right or wrong." *Id*. at 534 (citation and internal quotation marks omitted).

In this case the ALJ in its award and decision, which the commission attached and incorporated into its Final Award, set forth Koprivica's findings in regard to Ard's injuries and disability rating. In the "Evidence Presented" section of its decision, the ALJ stated:

> Mr. Ard saw Dr. Koprivica for an evaluation on July 23, 2011. Dr. Koprivica initially only addressed Mr. Ard's physical injuries. He opined that, based on the injuries to Mr. Ard's left shoulder, chest, pelvis, right foot, right ankle, and acting under the hypothetical that a vocational expert determined that Mr. Ard was not permanently and totally disabled, Mr. Ard had a 65% permanent disability to the body as a whole. This rating was based on the synergism of combining the multiple physical impairments to each body part.

6

The ALJ also summarized Dr. Koprivica's deposition testimony concerning the multiple injuries that Ard sustained as a result of the October 15, 2010 work accident and concerning the restrictions that would be placed on Ard's physical activities as a result of the multiple injuries he suffered. The ALJ then stated:

> In assessing the October 15, 2010 work-related injuries, Dr. Koprivica apportioned 30 percent permanent partial disability of the left upper extremity at the 232-week level for the injury to Mr. Ard's left shoulder. For Mr. Ard's multiple rib fractures, with the ongoing chest wall pain that will impact on his limit to push and pull forcefully, Dr. Koprivica assigned a 5 percent permanent partial disability to the body as a whole. For the multiple pelvic fractures that required surgical intervention, Dr. Koprivica apportioned 25 percent permanent partial disability to the body as a whole. For the right ankle (which was basically a fracture dislocation of the ankle that required surgery), Dr. Koprivica apportioned 35 percent permanent partial disability of the right foot at the level of the ankle at the 155 week level.
>
> . . .
>
> Under the hypothetical that a vocational expert determined Mr. Ard was not totally disabled, Dr. Koprivica would assign a global 65 percent permanent partial disability to the body as a whole. This combined disability considers the synergism of combining the multiple physical impairments attributable to the October 15, 2010 work accident.

Plunkett argues that, when an ALJ merely outlines and summarizes a witness's testimony, it does not meet the requirements of section 287.460.1 for findings of fact. Such is true when the ALJ fails to indicate what weight or credibility it gave to any of the evidence. *Loepke v. Opies Transport, Inc.*, 945 S.W.2d 655, 661 (Mo. App. 1997), *overruled on other grounds by Hampton*, 121 S.W.3d at 223, 226. In this case, however, the ALJ explicitly stated, "I find Dr. Koprivica's opinion to be credible on the body as a whole rating." The ALJ further concluded that Ard had a permanent partial disability of 65 percent to the body as a whole "based on the rating of Dr. Koprivica." "[D]etailed summaries of the facts are not required in an agency's order and report[.]" *Carver v. Delta Innovative Servs.*, 379 S.W.3d 865, 870 (Mo. App. 2012) (citation and

7

internal quotation marks omitted). The findings just have to be sufficient to demonstrate how the controlling issues were decided. Given that the ALJ outlined and summarized Koprivica's testimony and then found his opinion to be credible, the Commission's decision that Ard had a 65 percent permanent partial disability to the body as a whole was supported by substantial and competent evidence.

We, however, caution the Commission that in the future it should make factual findings rather than summarizing witnesses' testimony. Summaries may be "a useful reference tool for the ALJ's own use in understanding the facts." *Stegman*, 274 S.W.3d at 536. The summaries, however, "are of little value to this court" and "cannot substitute for factual findings (along with conclusions of law) in the opinion itself." *Id*. "When received in isolation, the neutrally written summaries constitute an invitation for us to exercise our own judgment in drawing inferences in order to make our own findings as to pertinent factual matters, which we are not permitted to do." *Id*.

In its second point on appeal, Plunkett contends that the Commission erred in awarding Ard's personal representative both accrued and unaccrued benefits. We disagree.

Section 287.230.1 provides:

> The death of the injured employee shall not affect the liability of the employer to furnish compensation as in this chapter provided, so far as the liability has accrued and become payable at the time of the death, and any accrued and unpaid compensation due the employee shall be paid to his dependents without administration, or if there are no dependents, to his personal representative or other persons entitled thereto, but the death shall be deemed to be the termination of the disability.

The dictionary definition of "accrued" has been defined as "'to come into existence as a legally enforceable claim.'" *Cantrell v. Baldwin Transp. Inc.*, 296 S.W.3d 17, 20 (Mo. App. 2009)[5] (quoting Merriam-Webster's Collegiate Dictionary (11th ed. 2003)). A "permanent partial disability" is "a disability that is permanent in nature and partial in degree." *Id*. "The level of permanent partial disability associated with an injury cannot be determined until the injury 'reaches a point where it will no longer improve with medical treatment' or, in other words, reaches maximum medical improvement." *Id*. (quoting *Cardwell v. Treasurer of State of Mo.*, 249 S.W.3d 902, 910 (Mo. App. 2008)). The *Cantrell* court, therefore concluded that the plain language of the term "accrued" as used in section 287.230.1 means that a "[c]laimant's right to permanent partial disability had to have existed as a matter of fact prior to [an] [e]mployee's death in order for [the claimant] to be entitled to compensation" and that no such right accrues until an employee reaches maximum medical improvement. *Cantrell*, 296 S.W.3d at 21.

In our case, no one contests that Ard had reached maximum medical improvement on April 6, 2011. Thus, Ard's permanent partial disability of 65 percent to the body as a whole accrued when Dr. Wise released Ard at maximum medical improvement on April 6, 2011. The Commission determined that Ard was entitled to $99,333.00 for his permanent partial disability of 65 percent to the body as a whole. Those benefits accrued at the time that Ard reached maximum medical improvement and not at the time benefits were paid.[6] Pursuant to section

---

[5]This opinion was authored by Supreme Court Judge Zel Fischer who was sitting with the Southern District of this court as a Special Judge on the case.

[6]Plunkett relies upon section 287.230.2, which discusses the resolution of "unpaid **un**accrued compensation" after the death of the employee (where the employee's death is not caused by the workplace injury). Here, however, there is no **un**accrued compensation benefit relevant to Mr. Ard's claim for worker's compensation; hence, section 287.230.2 is inapposite to the resolution of this case.

287.230.1, the Commission, therefore, did not err in ordering that the accrued and unpaid compensation due Ard in the amount of $99,300.00 was payable to Ard's personal representative.

We affirm the Commission's decision.

/s/ *James Edward Welsh*
James Edward Welsh, Judge

All concur.