

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| PATRICK RYAN, | ) | No. ED112149 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, SECOND INJURY | ) | |
| FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: July 8, 2025 |

### Introduction

Patrick Ryan ("Ryan") appeals the Labor and Industrial Relations Commission's ("Commission") decision denying his claim against the Second Injury Fund ("Fund") for permanent total disability ("PTD") benefits. Ryan's three points on appeal center on whether the enhanced permanent partial disability ("PPD") attributed to his 2011 pre-existing right shoulder injury should be considered in determining whether he is entitled to PTD benefits from the Fund.

The disposition of this appeal turns on the application of § 287.220.3[1] ("Subsection 3") of the Missouri Workers' Compensation Act, which applies to all PTD claims against the Fund. Pertinent to this appeal is the first condition of Subsection 3, which provides a claimant is entitled to PTD benefits if the claimant has at least one qualifying pre-existing disability equaling a

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. (2015), unless otherwise stated.

minimum of 50 weeks of PPD, and which is "[a] direct result of a compensable injury as defined in section 287.020." §§ 287.220.3(2)(a)a–287.220.3(2)(a)a(ii).

The Supreme Court of Missouri recently addressed the issue raised in this appeal in *Eckardt v. Treasurer of Missouri*, 710 S.W.3d 523 (Mo. banc. 2025) and, therefore, this Court is bound to follow this decision. In applying *Eckardt,* this Court holds that strict construction of Subsection 3 does not permit the consideration of the enhanced PPD previously attributed to Ryan's 2011 preexisting right shoulder injury in determining whether it is a qualifying disability. Without the enhanced PPD, Ryan's right shoulder injury fails to reach the 50-week threshold necessary to establish the first condition of Subsection 3. As a result, we do not address whether the right shoulder injury is a pre-existing injury which is "[a] direct result of a compensable injury as defined in section 287.020[.]"

Accordingly, this Court affirms the Commission's denial of PTD benefits.

## Background

Ryan worked in various trades over five decades. Throughout his career, Ryan suffered several work-related injuries.

### 1. 2004 - right knee

In 2004, while working at Pillsbury General Mills, Ryan suffered an injury to his right knee. Ryan underwent several surgeries and eventually had a knee replacement. The 2004 right knee injury resulted in a workers' compensation settlement for 75% of the right knee or 120 weeks of PPD.

### 2. 2007 - left shoulder and cervical spine

In 2007, while working for Hannibal Board of Public Works ("Employer"), Ryan hurt his left shoulder and cervical spine. Ryan underwent surgery for each injury. He brought claims

against Employer for the primary injuries and against the Fund for the disability that resulted from his pre-existing 2004 injury in combination with the primary injuries to his left shoulder and cervical spine. Ryan settled with Employer for 25% PPD (58 weeks) of the left shoulder and 25% PPD (100 weeks) of the body as a whole ("BAW") referable to the cervical spine.

Ryan's claims against the Fund proceeded to trial. The Administrative Law Judge ("ALJ") found the 2007 injury caused 25% PPD (58 weeks) to the left shoulder and 25% of the BAW (100 weeks) for the cervical spine. The ALJ found Ryan had a 75% pre-existing disability to the right knee (120 weeks) from the 2004 injury. The ALJ concluded the 2004 pre-existing injury and 2007 primary disabilities combined for 278 weeks of PPD or 69.5% of the BAW. The ALJ then awarded to Ryan and against the Fund enhanced PPD of 15% or 42 weeks on top of the 278 weeks pursuant to § 287.220, RSMo 2011. The Fund did not appeal the award and paid it.

### 3. 2011 - right shoulder and spine

Ryan's third injury occurred while working for Employer in 2011. Ryan injured his right shoulder and spine. Ryan and Employer settled the right shoulder claim for 20% PPD or 46.4 weeks and his spine claim for 20% PPD or 80 weeks of the BAW. Ryan's claim against the Fund proceeded to trial to determine the disability that resulted from the combination of his 2011 primary injuries and his 2004 and 2007 pre-existing disabilities.

The ALJ entered an award in favor of Ryan. The ALJ found Ryan had 404.4 weeks of total disability which derived from his 2011 primary claims and all of his pre-existing PPD's: (1) 2011 right shoulder – 46.4 weeks, (2) 2011 BAW at the spine –80 weeks, (3) 2004 left shoulder – 58 weeks, (4) 2004 BAW at the cervical spine – 100 weeks, (5) 2007 right knee – 120 weeks.

The ALJ concluded the 2004, 2007, and 2011 disabilities combined resulted in a greater disability than their simple sum and awarded enhanced PPD of 15% to the 404.4 weeks of total

3

disability for an enhanced PPD award of 60.66 weeks against the Fund pursuant to § 287.220, RSMo 2011. Again, the Fund did not appeal the 2011 award and paid it.

### 4. *The case at bar: 2015 - right shoulder and cervical spine*

On August 14, 2015, Ryan sustained injuries to his spine and right shoulder ("Primary Injuries"). He brought claims against Employer and the Fund. Ryan and Employer settled the cervical spine claim for an approximate 12.5% or 50 weeks of the BAW and 12.5% or 29 weeks of the right shoulder. Ryan's claim against the Fund proceeded to trial. Ryan asserted he was now PTD based on the disability from the 2015 Primary Injuries together with his 2004, 2007, and 2011 pre-existing disabilities.

Ryan's medical expert testified by deposition. The medical expert opined Ryan is PTD as a direct result of his 2015 Primary Injuries in combination with his pre-existing disabilities. The medical expert based his opinion on his previous examinations of Ryan in connection with his 2004 and 2011 injuries and a 2017 physical examination and assessment of Ryan's right knee, cervical spine, lumbar spine, and both shoulders.

Ryan also supported his claim of PTD with a vocational rehabilitation expert. The expert testified by deposition and stated Ryan was neither able to return to his prior employment nor engage in any substantial gainful employment available in the national economy as a result of his 2015 Primary Injuries and his 2004, 2007, and 2011 pre-existing injuries. The Fund presented no witnesses or exhibits at the hearing.

The ALJ issued an award in favor of Ryan. The ALJ listed Ryan's pre-existing PPDs as follows:

a. 2004 right knee – 75% or 120 weeks-paid by employer

b. 2007 left shoulder – 25% or 58 weeks-paid by employer

4

c.  2007 cervical spine – 25% or 100 weeks-paid by employer

d.  2007 enhanced PPD – 42 weeks-paid by Fund

e.  2011 right shoulder – 20% or 46.4 weeks-paid by employer

f.  2011 spine – 20% or 80 weeks-paid by employer

g.  2011 enhanced PPD – 60.66 weeks-paid by Fund

The ALJ applied a portion of the 42 weeks of enhanced PPD awarded in 2007 to the 2007 cervical spine PPD, increasing that PPD from 100 weeks to 115 weeks; and to the 2007 left shoulder PPD, increasing it from 58 weeks to 66.2 weeks.

The ALJ turned to Ryan's 2011 injuries and disabilities. He acknowledged Ryan's 2011 injuries resulted in PPD of 20% BAW or 80 weeks of the spine and 20% PPD or 46.4 weeks of the right shoulder. Then, pursuant to § 287.220, RSMo 2011, the ALJ added a portion of the 60.66 weeks of enhanced PPD awarded in 2011 to each of those two disabilities. The ALJ added 12 weeks of the 60.66 weeks of enhanced PPD to the 80 weeks of disability to the spine for a total of 92 weeks of PPD. The ALJ determined the right shoulder was 11.5% of Ryan's total disabilities (46.4 weeks right shoulder ÷ 404.4 weeks total disabilities) and multiplied the 60.66 weeks of enhanced PPD by that percentage (11.5% x 60.66 = 6.98). The ALJ added "6.98 weeks of disability compensation paid by the Fund" to the 46.4 weeks of the right shoulder such that the pre-existing disability of the right shoulder now equaled 53.38 weeks. The ALJ determined "[t]he medically documented pre-existing disability attributable to the right shoulder is 46.4 weeks of disability compensation paid by the employer and 6.98 weeks of disability compensation paid by the Fund." The ALJ found all of Ryan's pre-existing disabilities to be a direct result of compensable injuries as defined in § 287.020, and entered an award in favor of Ryan and against the Fund for PTD benefits.

The Fund appealed the award and filed an application for review with the Commission. The Fund alleged the ALJ erred: (1) in adding a portion of the 2011 enhanced PPD to the 2011 right shoulder disability such that it reached the 50-week statutory threshold; (2) in finding the right shoulder disability could be properly considered under the second condition of Subsection 3; and (3) in finding Ryan's medical expert's testimony credible.

The Commission reversed the award. The Commission found Ryan had the following pre-existing disabilities at the time of the 2015 Primary Injuries:

  a. 75% PPD of the right knee or 120 weeks;

  b. 25% PPD of the left shoulder or 58 weeks;

  c. 25% PPD of the BAW referable to the cervical spine or 100 weeks;

  d. 20% PPD of the right shoulder or 46.4 weeks; and

  e. 20% PPD of the BAW referable to the spine or 80 weeks.

The Commission found the 2011 right shoulder disability did not reach the 50-week threshold and, therefore, was a non-qualifying disability under the first condition of Subsection 3. The Commission concluded:

> [T]he Fund's liability for the synergistic combination or loading factor required the intervention of an independent or superseding cause in the form of one or more pre-existing disabilities. Because the synergistic disability previously assessed to the Fund did not directly result from a compensable injury, there is no statutory authority to add any portion of that loading factor to determine whether [Ryan's] pre-existing disabilities meet the 50-week threshold.

The Commission further found that "at the time of the 2015 primary injury[,] [Ryan] had 20% PPD of the right shoulder (46.4 weeks), all of which was a direct result of his 2011 compensable injury." The Commission found the evidence Ryan is PTD to be credible and persuasive, and that Ryan's total disability resulted from the combination of his 2015 Primary

6

Injuries and his pre-existing work-related disabilities. But, the Commission ultimately concluded Ryan failed to carry his burden of proof under § 287.220.3 for PTD benefits against the Fund.

This appeal follows.

## Standard of Review

This Court's review of the Commission's decision is governed by the Missouri Constitution, article V, section 18, and § 287.495. *Krysl v. Treasurer of Missouri*, 642 S.W.3d 312, 315 (Mo. App. E.D. 2022). "Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is 'supported by competent and substantial evidence upon the whole record.'" *Id*. Pursuant to § 287.495, this Court must affirm the Commission's decision "unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award." *Id*. In reviewing the Commission's decision, "we must consider the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, and we will set aside the Commission's award only if it is contrary to the overwhelming weight of the evidence." *Maness v. City of De Soto*, 421 S.W.3d 532, 536–37 (Mo. App. E.D. 2014).

"We defer to the Commission on issues of fact, credibility of witnesses, and weight to be given [to] conflicting evidence." *Id.* at 537. However, "we review *de novo* the Commission's interpretation of the workers' compensation statute and its application of the law without deference to the Commission's findings." *Marberry v. Treasurer of Missouri*, 635 S.W.3d 586, 590 (Mo. App. E.D. 2021).

**Discussion**

Ryan raises three points on appeal. In Point I, Ryan argues the Commission erred in denying him PTD benefits by finding the 2011 right shoulder injury was not a qualifying injury by considering the 2011 right shoulder disability in isolation from the enhanced PPD. In Point II, Ryan claims the right shoulder disability, after including a portion of the enhanced PPD, satisfies the "direct result" requirement of § 287.220.3(2)(a)a(ii). In Point III, Ryan contends the Commission's decision to treat the right shoulder disability in isolation from the enhanced PPD is inconsistent with § 287.220, medical knowledge, case law, and common sense. For ease of analysis, we address Ryan's points together.

*A. Section 287.220*

For purposes of Fund liability, a claimant's injuries are characterized as PPD or PTD. PPD "is a disability that is permanent in nature and partial in degree." *Jim Plunkett, Inc. v. Ard*, 499 S.W.3d 333, 339 (Mo. App. W.D. 2016) (internal quotations and citation omitted). Conversely, "[PTD] arises when the employee's injury is such that the employee has become permanently unemployable on the open labor market and is entitled to benefits through the remainder of the employee's lifetime." *Nivens v. Interstate Brands Corp.*, 585 S.W.3d 825, 835 (Mo. App. W.D. 2019).

Until 2013, Missouri workers could make claims for PPD and PTD benefits from the Fund. That changed when "the legislature amended section 287.220 to limit the number of workers eligible for fund benefits because the Fund was insolvent." *Treasurer of State v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). The legislature created two subsections: Subsection 2 is limited to compensable work injuries occurring before January 1, 2014, and Subsection 3, the provision at issue here, is limited to compensable work injuries occurring after January 1, 2014. *Id.*

Pursuant to Subsection 3, Ryan "must meet two conditions to make a compensable PTD claim against the Fund." *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 566 (Mo. banc 2022). Under the first condition of Subsection 3, a claimant must have at least one qualifying pre-existing disability that is medically documented, equaling a minimum of 50 weeks PPD, and which meets one of the four categories listed in § 287.220.3(2)(a)a(i)–(iv). Relevant to this appeal is sub-criteria § 287.220.3(2)(a)a(ii): a pre-existing injury that is "[a] direct result of a compensable injury as defined in section 287.020[.]"

Under the second condition of Subsection 3, the claimant must show he "thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability … results in [PTD]…." § 287.220.3(2)(a)b. "The 'subsequent compensable work-related injury' is often referred to as the 'primary injury[,]'" which in this case refers to Ryan's 2015 cervical spine and right shoulder injuries. *Parker*, 622 S.W.3d at 181.

*B. Analysis*

We now turn to Ryan's Primary Injuries sustained while working for Employer. The parties do not dispute Ryan's prior disabilities were the result of compensable injuries and each of those injuries, except for his 2011 right shoulder injury, resulted in more than 50 weeks of PPD. There is also no dispute Ryan is PTD due to the myriad of pre-existing injuries and his 2015 Primary Injuries. Ryan's appeal centers on the Commissions' finding that his 2011 pre-existing right shoulder injury does not meet the first condition of Subsection 3. Specifically, Ryan argues the Commission should have applied the enhanced amount of PPD attributed to his right shoulder injury. When the load factor is applied, Ryan argues, the 46.4 weeks of PPD the Commission attributed to the right shoulder injury rises above the 50-week threshold.

In making its determination, this Court considered Ryan's argument that the PPD weeks awarded to the right shoulder disability should not be considered in isolation from the enhanced PPD because it is inconsistent with § 287.220. Nonetheless, this Court is "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court…." *Boles v. City of St. Louis*, 690 S.W.3d 592, 606 (Mo. App. E.D. 2024) (citation omitted). The Supreme Court of Missouri recently decided *Eckardt v. Treasurer of Missouri*, and held an enhanced PPD should not be used in determining whether a claimant is entitled to PTD benefits from the Fund. 710 S.W.3d at 528. As such, we are bound to apply *Ekhardt*'s holding to the present matter.

For background, enhanced PPD is sometimes referred to as a "loading factor" or "multiplicity factor," which "is a special or additional allowance for cumulative disabilities resulting from a multiplicity of injuries." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 776 (Mo. App. E.D. 2015). The enhanced PPD "came into effect only when a claimant sought PPD benefits under the pre-2013 version of the workers' compensation statutes." *Eckardt*, 710 S.W.3d at 528. However, "effective January 1, 2014, the legislature eliminated claims for PPD and, in so doing, also eliminated the attendant load factor analysis." *Id*.; *see also* § 287.220.3(2). Nothing in Subsection 3's statutory framework, "which this Court is bound to strictly construe, permits or even suggests a load factor may be applied to increase the amount of PPD attributed to a preexisting disability." *Eckardt*, 710 S.W.3d at 528. As a result, without application of the loading factor, this Court holds Ryan's 2011 right shoulder injury does not reach the 50-week threshold and cannot be considered in combination with his Primary Injuries to determine if he is entitled to PTD benefits. *See id*. at 529.

Given our holding that the right shoulder disability does not reach the 50-week threshold, we need not address whether Ryan's right shoulder injury is a pre-existing injury that is "[a] direct result of a compensable injury as defined in section 287.020[.]"

Points I–III are denied.

### Conclusion

The Commission's award is affirmed.

_____
Michael S. Wright, Judge

John P. Torbitzky, C.J. and
James M. Dowd, J. concur.

11